

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-19-2003

# Youngblood v. DeWeese

Precedential or Non-Precedential: Precedential

Docket No. 03-1722

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Youngblood v. DeWeese" (2003). *2003 Decisions.* Paper 5.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/5

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed December 18, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1722

ROSITA C. YOUNGBLOOD; PARENTS UNITED
FOR BETTER SCHOOLS, INC.; PENN-KNOX
NEIGHBORHOOD ASSOCIATION; BUDD HOUSE
INC.; EDITH WEEKS, Reverend; EDWINA BAKER

v.

H. WILLIAM DEWEESE; MICHAEL VEON,

Appellants

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 02-cv-07683)
District Judge: Honorable J. Curtis Joyner

Argued October 29, 2003

Before: SCIRICA, *Chief Judge*, NYGAARD and
AMBRO, *Circuit Judges*

(Opinion filed December 18, 2003)

André L. Dennis, Esquire
Danielle Banks, Esquire (Argued)
Stradley, Ronon, Stevens & Young
260 One Commerce Square
Philadelphia, PA 19103

*Attorneys for Appellants*

Anthony L. Cianfrani, Esquire
 (Argued)
Suite 1920
1500 Walnut Street
Philadelphia, PA 19102

*Attorney for Appellees*

## OPINION OF THE COURT

AMBRO, *Circuit Judge*:

We decide whether two state representatives enjoy legislative immunity from another representative's claim that they unfairly allocated the legislature's office-staffing appropriation in violation of her civil rights. The Defendants-Appellants, Representatives H. William DeWeese and Michael Veon, appeal from the order of the United States District Court for the Eastern District of Pennsylvania denying their motion to dismiss. We conclude that Representatives DeWeese and Veon's allocation of district office funds from the legislature's appropriation was a legislative act, and thus they are entitled to legislative immunity. Accordingly, we reverse.

## I.

### Facts and Procedural Posture

The Pennsylvania House of Representatives annually appropriates funds to be used by state representatives for district office staffing and constituent service programs. The political party leadership, however, decides how this appropriation is allocated among individual representatives.

On October 3, 2002, Representative Youngblood, a Democrat, sued Representative DeWeese, the leader of the House Democratic Caucus, and Representative Veon, the House Democratic Whip, alleging that, in retaliation for her dissent against the party leadership, they denied her an adequate budget allocation for district office staffing and constituent services. Youngblood claimed that, in so doing,

DeWeese and Veon violated her Fourteenth Amendment equal protection rights, which is actionable under 42 U.S.C. § 1983.

Representatives DeWeese and Veon moved to dismiss Representative Youngblood's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that her claims are barred both by the doctrines of legislative immunity and sovereign immunity. They also argued that the individual and organizational constituents who joined Representative Youngblood's complaint lacked standing.

The District Court denied the motion to dismiss in a one-page order on February 14, 2003. In a footnote, the Court indicated that Representatives DeWeese and Veon are not protected by legislative or sovereign immunity, and that Youngblood's constituent co-plaintiffs have a legally cognizable injury sufficient to confer individual and associational standing. Representatives DeWeese and Veon filed this timely appeal from that order.

## II.

### Jurisdiction and Standard of Review

We generally do not have jurisdiction under 28 U.S.C. § 1291 to review interlocutory decisions such as the denial of a motion to dismiss. Under the Collateral Order Doctrine,[1] however, we have recognized exceptions to this rule. One well-established exception is for orders denying motions to dismiss for reasons of immunity. *See, e.g., In re Montgomery County*, 215 F.3d 367, 373 (3d Cir. 2000)

---

1. The Collateral Order Doctrine excepts a "narrow range" of interlocutory decisions from the general rule that only final orders are appealable. *In re Montgomery County*, 215 F.3d 367, 373 (3d Cir. 2000) (*citing Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545-46 (1949)). To fall within the Collateral Order Doctrine, an interlocutory decision must "conclusively determine the disputed issue, the issue must be completely separate from the merits of the action, and the decision must be effectively unreviewable on appeal from a final judgment." *Id.* (*citing Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)).

*(citing Nixon v. Fitzgerald*, 457 U.S. 731 (1982)). Thus, we have jurisdiction over the District Court's denial of DeWeese and Veon's motion to dismiss on immunity grounds.[2]

Absolute legislative immunity is a pure legal question over which we exercise plenary review.[3] *Id.* at 372.

## III.

### The Doctrine of Legislative Immunity

Since 1951, state legislators have enjoyed absolute immunity from suit and liability for their legislative activities. *Tenney v. Brandhove*, 341 U.S. 367 (1951). The scope of state legislators' immunity is "coterminous" with the absolute immunity afforded to members of Congress under the Speech or Debate Clause, Art. I, § 6, of the United States Constitution. *Larsen v. Senate of the Commonwealth of Pa.*, 152 F.3d 240, 249 (3d Cir. 1998) (*citing Supreme Ct. of Va. v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 732-33 (1980)). Thus, the history of the Speech or Debate Clause—including the rationale behind its drafting and the judicial decisions of the last two centuries construing its scope—is relevant to this case involving state legislators.

The Speech or Debate Clause provides that, "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const., art. I, § 6, cl. 1. The Constitution's framers borrowed the idea that legislators should be protected from arrest and civil prosecution from England, where members of Parliament had enjoyed legislative

---

2. We have no precedent on whether the denial of a motion to dismiss on the basis of standing is immediately appealable under the Collateral Order Doctrine. Because we reverse the District Court's order on legislative immunity grounds, it is unnecessary for us to reach this jurisdictional question today.

3. Because we decide that Representatives DeWeese and Veon enjoy legislative immunity in this case, we do not reach the question of whether they are entitled to sovereign immunity.

immunity since 1689. *See Tenney*, 341 U.S. at 372. Ensuring a strong and independent legislative branch was essential to the framers' notion of separation of powers, which required "some practical security for each [branch] against the invasion of the others." *The Federalist* No. 48 (Madison). The Speech or Debate Clause is one manifestation of this practical security for protecting the independence of the legislative branch—by ensuring that legislators are not subject to "prosecution by an unfriendly executive and conviction by a hostile judiciary." *See United States v. Johnson*, 383 U.S. 169, 179 (1966). So obvious was the Clause's importance that the Constitutional Convention in 1787 approved it without discussion and without opposition. *Id.* at 177.

The Supreme Court first addressed the Speech or Debate Clause in 1880. *See Kilbourn v. Thompson*, 103 U.S. 168 (1880). In deciding that members of Congress were immune from false-imprisonment claims arising from their acts of voting for a resolution that ordered a witness's arrest, the Court rejected a "narrow view" of the Clause limiting the privilege to "words spoken in debate." *Id.* at 204. Rather, the Court concluded that legislative immunity applies to written reports presented by congressional committees, the offering of resolutions, the act of voting, and "to the things generally done in a session of the House by one of its members in relation to the business before it." *Id.*

The Court next construed the Speech or Debate Clause in 1951 when it held that legislative immunity extended to claims that members of a state legislature's Un-American Activities Committee had violated a witness's civil rights in the course of an investigative hearing. *Tenney*, 341 U.S. at 378. Investigation is within the "sphere of legitimate legislative activity" to which legislative immunity extends. *Id.* at 376-78. The Court also clarified that legislators' motives are irrelevant to whether their activities enjoy legislative immunity, stating that "[t]he claim of an unworthy purpose does not destroy the privilege." *Id.* at 377.

Since *Tenney*, the Supreme Court has defined the sphere of legitimate legislative activities to include activities that are "an integral part of the deliberative and communicative

processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972). For example, the legitimate legislative sphere includes such acts as: voting for a resolution, *Powell v. McCormack*, 395 U.S. 486, 504-05 (1969); subpoenaing and seizing property and records for a committee hearing, *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 507 (1975), and *Dombrowski v. Eastland*, 387 U.S. 82, 84-85 (1967); preparing investigative reports, *Doe v. McMillan*, 412 U.S. 306, 313 (1973); addressing a congressional committee, *Gravel*, 408 U.S. at 616; and, of course, speaking before the legislative body in session, *Johnson*, 383 U.S. at 184-85.

But the Court has rejected a reading of the Speech or Debate Clause that is so broad as to cover everything "related to the due functioning of the legislative process." *United States v. Brewster*, 408 U.S. 501, 513 (1972). Immunity does not extend to acts that are "casually or incidentally related to legislative affairs but not a part of the legislative process itself." *Id.* at 528. Thus there is no immunity for political activities, including "a wide range of legitimate 'errands' performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, news releases, and speeches delivered outside the Congress." *Id.* at 512. And for sure legislative immunity does not extend to accepting bribes, *id.* at 526, and disseminating legislative materials that are classified, *Gravel*, 408 U.S. at 625-26, or libelous, *Doe*, 412 U.S. at 314-15.

In *Bogan v. Scott-Harris*, 523 U.S. 44 (1998), its most recent decision on legislative immunity and one that is instructive to our case, the Court held that municipal legislators enjoy the same legislative immunity as federal and state legislators. *Id.* at 49. Thus, municipal officials were immune from a plaintiff's claim that the officials violated her civil rights when they enacted a budget that eliminated her position. *Id.* at 55. Though the Court did not

outright require an act to be legislative in both "formal[ ] character" and substance in order to enjoy immunity, it observed that in this case the budget ordinance in substance "bore all the hallmarks of traditional legislation" because it "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *Id.* at 55-56.

## IV.

### Analysis of Representatives DeWeese and Veon's Legislative Acts

Representative Youngblood alleges that Representatives DeWeese and Veon allocated the General Assembly's total appropriation for district office staffing in a punitive manner in violation of her civil rights. To opine on immunity, we must examine the legislators' acts "stripped of all considerations of intent and motive." *Bogan*, 523 U.S. at 55; *see also Eastland*, 421 U.S. at 508; *Tenney*, 341 U.S. at 377. Thus, guided by the Supreme Court's Speech or Debate Clause jurisprudence,[4] we must determine whether

4. Youngblood argues that we should instead apply the two-part analysis we used in *Carver v. Foerster*, 102 F.3d 96 (3d Cir. 1996), to determine that a county commissioner did not enjoy legislative immunity for ordering the termination of all county employees who supported his political opponent. In *Carver*, we analyzed the commissioner's activities for whether they were both substantively and procedurally legislative. *Id.* at 100. We have since recognized, however, that the substance/procedure test was "developed for municipalities," where individual officials are more likely to perform a mixing of administrative and legislative functions, and thus have "decline[d] to extend [the *Carver*] analysis . . . to other levels of government." *Larsen v. Senate of the Commonwealth of Pa.*, 152 F.3d 240, 252 (3d Cir. 1998).

We similarly decline to apply the *Carver* analysis to this case, especially in light of language from the Supreme Court that, we believe, casts doubt on the propriety of using any separate test to examine municipal-level legislative immunity, *see Bogan*, 523 U.S. at 49 (holding that local legislators are "likewise" absolutely immune from suit under § 1983), particularly a two-part, substance/procedure test, *id.* at 55 (refusing to require that an act must be "legislative in substance" as well as of "formally legislative character" in order to be a legislative act).

Representatives DeWeese and Veon's acts of allocating the total appropriation for office staffing among the Democratic house members is "within the sphere of legitimate, legislative activity." *Tenney*, 341 U.S. at 376.

We conclude that they are, as "the sphere of legitimate, legislative activity" extends to "committee and House proceedings with respect to . . . matters which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625. The Pennsylvania General Assembly has the authority to appropriate funds to be used by Representatives for district office staffing and constituent service programs. *See* Pa. Const. Art. III, § 11 ("The general appropriation bill shall embrace nothing but appropriations for the executive, legislative and judicial departments of the Commonwealth, for the public debt and for public schools. . . ."). By appropriating a lump sum for all Representatives' district office-staffing, the General Assembly has delegated the legislative authority to determine an individual Representative's funding to the House of Representatives' party leaders. In this sense, delegating to the party leadership is no different than delegating to a legislative committee completing the allocation process. The party leaders' exercise of that authority is more than merely "casually or incidentally related" to the appropriation-legislation, *Brewster*, 408 U.S. at 528—it is its direct consequence. Representatives DeWeese and Veon's "deliberative and communicative processes" in the course of exercising that legislative authority is, therefore, privileged from judicial scrutiny. *Gravel*, 408 U.S. at 625.

Furthermore, Representatives DeWeese and Veon's allocation of the office-staffing appropriation, conducted pursuant to the legislative authority implicit in the appropriations legislation itself, is unlike the "extracurricular" activities that the Supreme Court has found to be outside the scope of legislative immunity, such as the political acts a legislator performs for her constituents in the hope of being reelected, the acceptance of bribes, and the unauthorized publication of legislative testimony or reports. *See Brewster*, 408 U.S. at 526; *Gravel*, 408 U.S. at 625-26; *Doe*, 412 U.S. at 314-15.

Rather, the allocation activities fit the description the *Bogan* Court used to describe a substantively legislative act: "a discretionary, policymaking decision implicating the budgetary priorities of the [House]." *Bogan*, 523 U.S. at 55-56.

We find support in the policy underlying legislative immunity, as the Supreme Court instructs us to construe the Speech or Debate Clause "broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501. If we allowed Representative Youngblood to challenge Representatives DeWeese and Veon's budgetary discretion in court, we would enable the judicial branch to scrutinize the manner in which the General Assembly allocates internal funds. This would compromise the independence of the legislative branch, the very principle legislative immunity is intended to protect. *See id.* at 502; *Tenney*, 341 U.S. at 373. That Representative Youngblood is challenging the punitive nature of Representatives DeWeese and Veon's allocation further evidences that in this case legislative immunity would serve its intended purpose of protecting against inquiry into legislators' motives. *See Johnson*, 383 U.S. at 180.

## V.

## Conclusion

We hold that Representatives DeWeese and Veon's acts of allocating the General Assembly's office-staffing appropriation among individual Representatives is a legislative act to which legislative immunity extends. Accordingly, the District Court's order denying Representatives DeWeese and Veon's motion to dismiss on this ground will be reversed.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*