NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3194
_____

JACQUELINE G. GOODWIN; RONALD G. CHAPEL; ROY E. CHRIST, JR.;
LEONARD J. LEMELLE, JR.; LYNETTE PASZEK,
Appellants

v.

RONALD D. CASTILLE, in his official capacity as Chief Justice of Pennsylvania;
DAUPHIN COUNTY BOARD OF ELECTIONS; THOMAS G. SAYLOR; J.
MICHAEL EAKIN; MAX BAER; DEBRA MCCLOSKEY TODD; SEAMUS P.
MCCAFFREY; JOAN ORIE MELVIN, In their official capacities as Justices of the
Pennsylvania Supreme Court
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF PENNSYLVANIA
(Civ. Action No. 1:11-cv-00979)
District Judge: Honorable William W. Caldwell
_____

Submitted Under Third Circuit LAR 34.1(a)
January 24, 2012
_____

Before: McKEE, *Chief Judge*, FISHER, and GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed: February 23, 2012)

_____

OPINION

_____

GREENAWAY, JR., *Circuit Judge*.

Jacqueline G. Goodwin, Ronald G. Chapel, Roy E. Christ, Jr., Leonard J. Lemelle, Jr., and Lynette Paszek (collectively, "Appellants") appeal from the July 19, 2011 Order of the District Court dismissing Appellants' action and denying Appellants' motion for a preliminary injunction. Appellants allege that the seven Justices of the Supreme Court of Pennsylvania (collectively, the "Judicial Appellees") violated their constitutional rights by eliminating Magisterial District 12-1-03 prior to an upcoming election to fill the magisterial district judge vacancy in the district. For the reasons that follow, we will affirm the District Court's Order.

## I. BACKGROUND

Because we write primarily for the benefit of the parties, we recount only the essential facts.

Pennsylvania's Unified Judicial System is a pyramidal structure of the State's court system. At the base of this configuration are the magisterial district courts, courts of limited jurisdiction that hear minor criminal and civil matters in counties throughout the State. There are over 500 magisterial district judges. The Pennsylvania Constitution vests the Supreme Court of Pennsylvania with the authority to structure magisterial districts. Pa. Const. art. V, § 7.

Pursuant to this authority, on June 29, 2010, the Supreme Court of Pennsylvania emailed all of the president judges in Pennsylvania's Unified Judicial System requesting that they evaluate the number of magisterial districts in their respective judicial districts. Based on economic concerns, the state supreme court sought to eliminate magisterial districts if a district judge position was, or was scheduled to become, vacant. In February 2011, Magisterial District Judge Joseph Solomon, of Magisterial District 12-1-03 (the "District"), informed Dauphin County President Judge Todd Hoover of his intent to retire. President Judge Hoover wrote a letter to the Supreme Court of Pennsylvania stating that the District would be vacant at the end of 2011 and recommended that it be eliminated and its caseload consolidated with that of other magisterial districts. President Judge Hoover also informed the Dauphin County Board of Elections (the "Board of Elections") of the potential District elimination and restructuring.

Prior to the Supreme Court of Pennsylvania's review of President Judge Hoover's recommendation, the Board of Elections printed unofficial ballots for the May 2011 primary election to fill office vacancies in Dauphin County, which included the listing for the magisterial judge vacancy in the District, with Appellants listed as candidates. The ballots did, however, provide notice that the District may be eliminated at the end of 2011.

On April 15, 2011, the Supreme Court of Pennsylvania issued a *per curiam* order adopting President Judge Hoover's recommendation to eliminate the District at the end of 2011 and stating that the magisterial judge vacancy in the District would not be reflected on the primary or general election ballot. As a result, the next unofficial ballot for the

3

Dauphin County elections listed no candidates for the District vacancy, instead noting that the District would be closed at year's end. After the Supreme Court of Pennsylvania approved President Judge Hoover's proposed redistricting plan, the Dauphin County Court of Common Pleas issued two administrative orders effectuating the elimination of the District and the impending reorganization. Consequently, there was no magisterial district judge vacancy in the District to be filled in the May 2011 primary or the November 2011 general election.

On May 20, 2011, Appellants filed suit against the Honorable Ronald Castille, Chief Justice of the Supreme Court of Pennsylvania, in his official capacity, and the Board of Elections, asserting claims under 42 U.S.C. § 1983 and Section 2 of the Voting Rights Act of 1965. Appellants also filed a motion for a preliminary injunction seeking to prevent the Supreme Court of Pennsylvania from eliminating the District and to have the magisterial district judge vacancy filled in the upcoming election. The complaint was later amended to add as defendants all of the Associate Justices of the Supreme Court of Pennsylvania, in their official capacities (collectively, with the Chief Justice and the Board of Elections, "Appellees").

On July 19, 2011, the District Court denied Appellants' motion for a preliminary injunction, without an evidentiary hearing, and *sua sponte* dismissed Appellants' Amended Complaint. Appellants filed a timely appeal.

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction under 28 U.S.C. §§ 1291 and 1292(a).

4

We review a district court's ultimate decision to deny a preliminary injunction for abuse of discretion, but we exercise plenary review over legal conclusions and review findings of fact for clear error. *Miller v. Mitchell*, 598 F.3d 139, 145 (3d Cir. 2010). We also exercise plenary review over a district court's decision to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Dique v. N.J. State Police*, 603 F.3d 181, 188 (3d Cir. 2010).

## III.  ANALYSIS

### A.  Denial of Motion for Preliminary Injunction

A district court must consider four elements in determining whether to grant a preliminary injunction: (1) reasonable probability of success on the merits; (2) irreparable injury to the moving party; (3) harm to the nonmoving party; and (4) the public interest. *Iles v. de Jongh*, 638 F.3d 169, 172 (3d Cir. 2011) (citation omitted). If the plaintiff is unable to establish that each element is in his favor, a preliminary injunction should not issue. *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999). We agree with the District Court that Appellants cannot demonstrate any reasonable probability of success on the merits and will affirm the denial of Appellants' motion for a preliminary injunction.

The District Court provided several justifications for denying Appellants' motion. First, the District Court concluded that Appellees were entitled to legislative or quasi-legislative immunity. Second, the District Court determined that Judicial Appellees were not "persons" under 42 U.S.C. § 1983. Third, the District Court reasoned that Judicial Appellees were entitled to sovereign immunity under the Eleventh Amendment. Because

5

the first of these issues is dispositive, we need only address the District Court's application of legislative immunity.

While judges are typically viewed as figures conferred with authority to perform judicial acts, it is sometimes appropriate for judges to perform certain enumerated legislative acts. *See Forrester v. White*, 484 U.S. 219, 227-28 (1988). When judges act pursuant to their legislative authority, legislative immunity insulates judges, much like traditional legislators, from suits challenging those acts. *Supreme Court of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 734 (1980). Legislative immunity is a bar to claims for injunctive and declaratory relief, *Larsen v. Senate of Pa.*, 152 F.3d 240, 253 (3d Cir. 1998), but it does not apply if the judge possesses the authority to "perform[] more than a legislative role" with respect to the contested conduct, such as independent enforcement authority. *Consumers Union*, 446 U.S. at 734.

We employ a two-part test that an act must satisfy to be considered legislative:

> First, the act must be 'substantively' legislative, i.e., legislative in character. Legislative acts are those which involve policy-making decision [sic] of a general scope or, to put it another way, legislation involves linedrawing. Where the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration. In addition, the act must be 'procedurally' legislative, that is, passed by means of established legislative procedures. This principle requires that constitutionally accepted procedures of enacting the legislation must be followed in order to assure that the act is a legitimate, reasoned decision representing the will of the people which the governing body has been chosen to serve.

*Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 774 (3d Cir. 2000) (quoting *Ryan v. Burlington Cnty., N.J.*, 889 F.2d 1286, 1290-91 (3d Cir. 1989)).

6

In *Gallas*, we determined that the Justices of the Supreme Court of Pennsylvania were entitled to legislative immunity for an order eliminating the position of Executive Administrator of the First Judicial District and reorganizing the supervisory structure of the district. *Id.* at 776-77. Regarding the substantively legislative nature of the act, we reasoned that the Justices acted pursuant to a "direct grant of rulemaking authority" for their order addressing policy concerns. *Id.* at 774. As to the act's procedurally legislative character, we noted that the Justices followed established acceptable procedures—the circulation of proposals, deliberation, a vote, and the adoption of a proposal—to reach their decision. *Id.* at 776.

Judicial Appellees are similarly entitled to absolute legislative immunity for their April 15, 2011 order removing the magisterial district judge vacancy from the primary and general election and eliminating the District altogether. Their decision to do so bares the same hallmarks of the legislative conduct immunized in *Gallas*.

Turning to the first of our two-part inquiry, the April 15, 2011 order was a substantively legislative act. The Supreme Court of Pennsylvania has the authority to fix "[t]he number and boundaries of magisterial districts of each class within each judicial district." Pa. Const. art. V, § 7. As in *Gallas*, this is a "direct grant of rulemaking authority from the state constitution." 211 F.3d at 774. Exercising this authority requires the performance of a function no different from those performed by the Pennsylvania General Assembly when it utilizes its constitutional power to pass legislation. *See id.*

Moreover, the order effectuated a general policy-making decision to reorganize the structure of the magisterial district courts. Before eliminating the District and

7

removing the magisterial district judge vacancy from the election, the Supreme Court of Pennsylvania emailed all of the president judges in Pennsylvania's Unified Judicial System, requesting that they "assess[] whether to eliminate any existing or upcoming vacant M[agisterial] D[istrict] J[udge] positions." (App. 235a.) The economic concerns that spurred the inquiry only serve to highlight the policy considerations attendant to the decision.

In addition, the April 15, 2011 order was procedurally legislative and was issued pursuant to a constitutionally valid protocol. After asking for all president judges to assess the structuring of their respective magisterial districts, President Judge Hoover informed the Supreme Court of Pennsylvania that the District would be vacant at the end of 2011 and recommended that this particular magisterial district judge position be eliminated. The state supreme court adopted the recommendation in its April 15, 2011 order and requested that President Judge Hoover submit a proposed reorganization plan. President Judge Hoover's recommended plan was approved, and the Dauphin County Court of Common Pleas issued two administrative orders effectuating the restructuring. We see no error in the Supreme Court of Pennsylvania's reasoned analytical approach.[1]

Appellants cite to *Consumers Union* for the proposition that, despite an assertion of legislative immunity, an injunction can issue against a justice of a state supreme court to prohibit that justice from enforcing an unconstitutional policy. (Appellants' Br. at 19-25.) We take no issue with this proposition. *See Consumers Union*, 446 U.S. at 736. But

---

[1] While not directly relevant to the state supreme court's decision-making process, throughout the deliberations, the Board of Elections provided notice of the closure on the unofficial ballots for the election and on its website.

8

we cannot agree with Appellants' argument that *Consumers Union* mandates an injunction against Judicial Appellees.

In *Consumers Union*, the Supreme Court of Virginia promulgated a professional ethics code for attorneys practicing in the state. *Id.* at 721-22. Aggrieved by a provision regarding attorney advertising, the plaintiffs sought a declaration that the provision was unconstitutional and a permanent injunction against its enforcement. *Id.* at 725-26. The Supreme Court of the United States concluded that the state supreme court's ability to independently enforce its ethics code by initiating disciplinary actions against attorneys who violated the provision rendered legislative immunity inapplicable for the state supreme court and its chief justice. *Id.* at 734-36.

Unlike *Consumers Union*, here Judicial Appellees have no independent enforcement mechanism regarding the April 15, 2011 order. Judicial Appellees cannot initiate proceedings to facilitate the elimination of the District or the magisterial district judge vacancy from the Dauphin County election. Appellants' reference to Judicial Appellees' power to impose sanctions and penalties against noncompliant parties is misplaced. Such inherent enforcement mechanisms apply to properly constituted judicial proceedings before the state supreme court, which are not at issue here. *See Commonwealth v. McMullen*, 961 A.2d 842, 849 (Pa. 2008) (discussing a court's authority to punish a party acting in contempt in judicial proceedings).

Appellants cannot demonstrate any reasonable probability of success on the merits of their claims. Judicial Appellees are entitled to legislative immunity for the decision embodied in their April 15, 2011 order. We will therefore affirm the denial of

9

Appellants' motion for a preliminary injunction. *See McTernan v. City of York, Pa.*, 577 F.3d 521, 528 (3d Cir. 2009) (finding that plaintiffs having no chance to succeed on merits was dispositive in preliminary injunction analysis).[2] Because Appellants acknowledge that the Board of Elections had no involvement in the decision-making process (App. 351a), given Judicial Appellees' legislative immunity, we agree with the District Court that a preliminary injunction by extension cannot issue against the Board of Elections.

### B. Dismissal of the Amended Complaint

Based on Judicial Appellees' legislative immunity, the District Court also *sua sponte* dismissed Appellants' Amended Complaint. Although the District Court failed to identify under what procedural rule it dismissed the Amended Complaint, we surmise that dismissal was in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Youngblood v. DeWeese*, 352 F.3d 836, 842 (3d Cir. 2003) (concluding that legislative immunity was grounds for dismissal under Rule 12(b)(6)). We have noted that *sua sponte* dismissal under Rule 12(b)(6) is proper after service of process, *Oatess v. Sobolevitch*, 914 F.2d 428, 430 (3d Cir. 1990), but that it should be exercised with caution to ensure that the decision to dismiss is an informed one, *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008).

This is the rare case where *sua sponte* dismissal was appropriate. The District Court had sufficient facts to determine that legislative immunity was an absolute bar to

---

[2] We need not address Appellees' additional argument that Appellants' claims are moot.

10

Appellants' action. Appellants could present no additional facts that would militate against a finding of legislative immunity. We will affirm the District Court's *sua sponte* dismissal of Appellants' Amended Complaint.[3]

## IV. CONCLUSION

For the foregoing reasons, we will affirm the District Court's Order.

---

[3] Although the District Court did not articulate whether dismissal was with or without prejudice, the dismissal was an adjudication on the merits and therefore assumed to be with prejudice. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).