PRECISION MARKETING,
INC., Petitioner

v.

COMMONWEALTH of Pennsylvania, The REPUBLICAN CAUCUS OF THE SENATE OF PA/AKA The SEN-ATE OF PA REPUBLICAN CAUCUS, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 19, 2013.

Decided Sept. 5, 2013.

George A. Heitczman, Bethlehem, for petitioner.

Steven J. Schiffman, Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, LEADBETTER, Judge, LEAVITT, Judge, BROBSON, Judge, McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge McGINLEY.

Before this Court in its original jurisdiction is the Motion for Summary Judgment filed by the Commonwealth of Pennsylvania, The Republican Caucus of the Senate of PA/AKA Senate of PA Republican Caucus (hereinafter "Senate Republican Caucus").[1]

In 1997, the Senate Republican Caucus and Precision Marketing, Inc. (Precision Marketing) entered into a Consulting Agreement whereby Precision Marketing agreed to develop and provide the Senate Republican Caucus with computer consulting and programming services. According to the Consulting Agreement, the services provided to the Senate Republican Caucus by Precision Marketing included "the development of base files or constituent contact lists compiled from the data base of voter information found at county boards of elections." Consulting Agreement, January 1, 1997, at 1–2.

On July 29, 2004, the parties executed an Addendum to the Agreement whereby the contract term was extended through December 31, 2014. On January 5, 2006, the parties signed a Second Addendum to the Consulting Agreement which specially retained Precision Marketing "to provide constituent outreach [telephone] calls . . . to be undertaken at the direction of the Customer [Senate Republican Caucus]."

---

1. The Pennsylvania Republican and Democratic Caucuses of the House of Representatives and the Democratic Caucus of the Senate have filed an amicus brief in support of the Republican Senate Caucus's Motion for Summary Judgment.

Second Addendum to Consulting Agreement, January 5, 2006, at 1.

By letter dated July 29, 2009, the Senate Republican Caucus informed Precision Marketing that the Consulting Agreement would be terminated as of August 31, 2009. The letter did not set forth any legal cause for terminating the Consulting Agreement and did not aver that Precision Marketing's work was unsatisfactory. The letter stated "[t]he [Senate Republican] Caucus has the legal right to cancel a contract with a private party that relates to a governmental function, without cause, and irrespective of the termination date or other procedures for cancellation set forth in the contract." Letter from Joseph B. Scarnati, President Pro Tempore, and Dominic F. Pileggi, Majority Leader, Senate Republican Caucus, to Thomas E. Severson, President, Precision Marketing, Inc., July 29, 2009, at 1.

Precision Marketing commenced an action before the Board of Claims[2] on January 28, 2010, seeking damages for breach of the Consulting Agreement. Precision Marketing averred that the Senate Republican Caucus lacked a legal basis to terminate the Consulting Agreement and that Precision Marketing was entitled to damages in the amount of $1,223,402.88, which represents the sum of the monthly payments it would have received between September of 2009, and December 31, 2014.

The Board of Claims determined that it did not have jurisdiction over the matter because the Senate Republican Caucus was not a "Commonwealth agency" and

transferred the matter to this Court because the Senate Republican Caucus is "the Commonwealth Government" for purposes of defining the Commonwealth Court's jurisdiction. Board of Claims Opinion, April 26, 2010, at 5–6.

Before this Court, the Senate Republican Caucus preliminary objected on the grounds that Precision Marketing's contract claim is barred by sovereign immunity. The Senate Republican Caucus argued that as an organization of the Senate, it is part of the sovereign government, and is thus, immune from suit.

In a Memorandum Opinion and Order dated May 11, 2011, this Court overruled the Preliminary Objections because it was unclear from the pleadings that the Senate Republican Caucus was "the Commonwealth" and, thus, entitled to sovereign immunity. This Court ordered the Senate Republican Caucus to conduct discovery, answer the Complaint and raise sovereign immunity as New Matter.[3]

The parties engaged in discovery. On April 19, 2012, Precision Marketing took the deposition of Senator Dominic Pileggi, Majority Leader of The Pennsylvania Senate. On July 12, 2012, the Senate Republican Caucus took the deposition of Stephen MacNett (Mr. MacNett), former Chief Counsel and General Counsel to the Senate Republican Caucus.

▮ The parties agree that discovery is now complete with respect to the defense of sovereign immunity raised by the Sen-

---

**2.** Section 1724 of the Commonwealth Procurement Code, 62 Pa.C.S. § 1724, limits the Board of Claim's jurisdiction to claims arising from contracts or written agreements entered into or executed by a "Commonwealth agency." The Procurement Code defines "Commonwealth agency" as "[a]n "executive agency", and independent agency, or a State-affiliated agency." The definitions of "execu-

tive agency" and "independent agency" specifically *exclude* the *"General Assembly and its officers or agencies."* 62 Pa.C.S. § 103.

**3.** *See* Pa. R.C.P. No. 1028(c)(2) (requiring trial court to consider evidence "by deposition or otherwise" if preliminary objections raise an issue of fact).

ate Republican Caucus in its New Matter.[4] The Senate Republican Caucus now moves for summary judgment.[5]

The Senate Republican Caucus argues that it is a "subset" of the Senate, created and existing solely for the purpose of fostering and facilitating the legislative duties and goals of the Senate. It argues that the General Assembly has inextricably bound the political party caucuses to the legislative process in Pennsylvania, and the continued existence of the caucus system is now essential to the General Assembly's and Senate's ability to perform their legislative duties. The Caucus argues that numerous statutory provisions and the deposition testimony make it clear that the Caucus is a legitimate and fundamental component of the legislative process in Pennsylvania, and no genuine issue of material fact exists as to the applicability of sovereign immunity.

Precision Marketing claims, on the other hand, that the Senate Republican Caucus is "merely a collection of people who are Senators and members of the Republican Party who wish to associate with each other." Precision Marketing Brief at 6. As the Senate Republican Caucus is a political organization which has no powers of legislation, it is neither the General Assembly, nor may it be construed to be "the Commonwealth" for purpose of sovereign immunity.

 The sole question before this Court is whether the Senate Republican Caucus is "the Commonwealth" such that it is entitled to claim sovereign immunity from Precision Marketing's breach of contract action.[6]

### Sovereign Immunity

 The doctrine of sovereign immunity, which provides that a state may not be sued without its consent,[7] clearly ap-

4. Precision Marketing does not agree that the material facts are undisputed. It contends that the Honorable Barry F. Feudale's report in the *28th Statewide Investigating Grand Jury Report Number 1* (Report) (set forth in its entirety in the Appendix to Brief in Support of Motion for Summary Judgment (Appendix) at 317a–350a) concluded that there is no legal basis for the Senate Republican Caucus and that it "exists in the shadows of the law." Precision Marketing's Brief at 6.

However, this Court does not agree that the Report created any issue of material fact which precludes summary judgment. First, the Report does not contain factual or legal findings, and does not represent binding legal authority. Second, the Report also was not the product of adversarial proceedings where all parties had the opportunity to present their own evidence and to cross-examine the evidence presented by others. Finally, although the Report is certainly critical of political party caucuses and questions whether they *should* be allowed to exist, the Report clearly acknowledges the existence of a strong political party caucus system that runs this State's legislature. Despite the recent criticisms and calls for the abolition of the politi-

cal party caucus system in Pennsylvania, the fact remains that it does exist.

5. Summary judgment is proper only where the record shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Rodriguez v. Department of Transportation*, 59 A.3d 45, 47 n. 2 (Pa.Cmwlth.2013). A court may grant summary judgment only when viewing the record in the light most favorable to the non-moving party, the right to such judgment is clear and free from doubt. *Shaffer–Doan ex rel. Doan v. Department of Public Welfare*, 960 A.2d 500, 517 (Pa.Cmwlth.2008).

6. The determination of whether an action is barred by sovereign immunity is entirely a matter of law. *Le Nature's, Inc. v. Latrobe Municipal Authority*, 913 A.2d 988 (Pa. Cmwlth.2006), *appeal denied*, 594 Pa. 717, 937 A.2d 447 (2007). The party asserting immunity has the burden of establishing such immunity. *State Public School Bldg. Authority v. Goodea Const. Co.*, 24 Pa. D. & C.3d 648 (1981).

7. 1 Pa.C.S. § 2310 provides, in pertinent part, that: "the Commonwealth, and its officials

plies to the state itself. However, in determining whether sovereign immunity will preclude a particular action against the state, certain factors must be considered. The most important consideration is whether the action is, in fact, one against the state. In other words, the state must be the real party in interest.[8]

Whether the state is the real party in interest depends on the issues raised and the relief sought. The purpose of sovereign immunity is to shield the state from the burden of defending lawsuits and to protect the state treasury from depletion due to the need to satisfy judgments. *Mullin v. Pennsylvania Department of Transportation*, 582 Pa. 127, 870 A.2d 773 (2005). The state is the real party in interest if the action seeks money damages and a judgment entered in the action will affect funds or property of the state. Stated another way, this Court must consider whether the entity was created by the state to perform a state function so that a judgment against it would, in essence, injure the state. *James J. Gory Mechanical Contracting, Inc. v. Philadelphia Housing Authority*, 579 Pa. 26, 855 A.2d 669 (2004).

### What is The Senate Republican Caucus?

At the outset this Court notes that there is no Pennsylvania enabling statute which created the Senate Republican Caucus or any other caucus for that matter. There is also no case law in Pennsylvania or any other state which discusses whether a political party caucus is part of the sovereign government for purposes of immunity from an action in contract.[9]

and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."

8. There is a distinction between "sovereign immunity" which applies to the state, state agencies, and state officers and employees, and the immunity of political subdivisions of the state such as counties and municipal corporations. The latter type of immunity is commonly referred to as "governmental immunity." *Tilli v. Northampton County*, 370 F.Supp. 459 (E.D.Pa.1974) (Pennsylvania law).

9. "Caucus" is defined in the American Heritage Dictionary as "a group within a legislative or decision-making body representing a specific interest or influence in a particular area of policy." American Heritage Dictionary 304 (3d ed. 1992). It is defined in Black's Law Dictionary as "[r]epresentatives from a political party who assemble to nominate candidates and decide party policy." Black's Law Dictionary 211 (7th ed. 1999).

The word "caucus" also has another related, yet distinct meaning. Aside from the "group of persons" definition above; caucus may refer to any "meeting" of such a group. *See* Merriam–Webster's Collegiate Dictionary 182 (10th ed. 1997), which defines caucus alternatively as: "a closed 'meeting' of a group of persons belonging to the same political party or faction [usually] to select candidates or to decide on policy." *See also* American Heritage Dictionary which defines "caucus" as: "[a] closed meeting of party members within a legislative body to decide on questions of policy or leadership." American Heritage Dictionary 304 (3d ed. 1992).

The sole statutory definition of "caucus" appears in Section 703 of the state's Sunshine Act: "[a] gathering of members of a political party or coalition which is held for the purpose of planning political strategy and holding discussions designed to prepare members of taking official action in the General Assembly." 65 Pa.C.S. § 703. This provision clearly applies the "gathering" or "meeting" definition of caucus. Section 712 of the Sunshine Act, 65 Pa.C.S. § 712, entitled "General Assembly Meetings Covered" enunciates what functions of the General Assembly are subject to the open meeting requirements. See 1977 Op.Atty.Gen. No. 13. Specifically excluded are the "meetings" of the caucuses.

For purpose of this controversy, this Court finds that the only applicable definition is the "group of persons" definition because clearly the Republican Senate Caucus refers to a group of Republican Senators, not a "meet-

In view of that, this Court is constrained to look to other sources, in addition to its own understanding of and familiarity with our State's government, to determine: (1) what exactly a political party caucus is, and (2) whether the Senate Republican Caucus performs a state function such that a judgment against it would, in essence, injure the state.

Starting with the most rudimentary of principles, "[t]he Commonwealth comprises three branches of government, each divided into many independent sub-parts." *Finn v. Rendell,* 990 A.2d 100, 106 (Pa. Cmwlth.2010). The Commonwealth plainly includes the General Assembly. The Pennsylvania Senate is part of the General Assembly. PA. CONST. art II, sec. 1.

The Senate organizes its members according to the two major political party affiliations, Republican and Democratic. Whichever party holds the most seats in the Senate is considered the Majority Caucus. The two subordinate organizations (Majority and Minority) which make up the Senate are known as the Senate caucuses. Currently, the Senate Republican Caucus is the Senate Majority Caucus. The Senate Republican Caucus is comprised of the elected Republican Senators who receive compensation from the State of Pennsylvania. The only qualification for membership to the Senate Republican Caucus is simply that one is elected to the Senate on the Republican ticket.[10] Its sessions are conducted in the Majority Cau-

cus Room of the State Senate which is located in the Main Capitol Building and attended by elected and appointed State officials, including the Sergeant–of–Arms, Secretary–Parliamentarian, and Chief Clerk. The Senate Republican Caucus, like the other three political party caucuses,[11] has existed since 1857.[12]

Although the Pennsylvania Constitution does not use the word "caucuses" to refer to the organization of the Senate into Majority and Minority groups, they are, in fact, the two constituencies that comprise the Senate. The Pennsylvania Constitution explicitly recognizes that the caucuses, through their leaders, operate as part of their respective chambers. Article II, Section 17 of the Pennsylvania Constitution establishes a Legislative Reapportionment Commission to reapportion, or redistrict, the state legislative districts of the Commonwealth on a decennial basis. Subsection (b) of Section 17 provides that "[t]he commission shall consist of five members, *four of whom shall be the majority and minority leaders of both the Senate and the House the Representatives,* or deputies appointed by each of them...." PA. CONST. art. II, sec. 17(b) (emphasis added).

The term "caucus" appears in the Pennsylvania Manual. The Senate Republican Caucuses vote to select their leaders, whips, caucus chairs and caucus secretaries.[13] The Pennsylvania Manual formally recognizes these positions as "public offi-

ing" of the group. Neither party appears to dispute this.

**10.** *104 Years of Leadership: Pennsylvania House of Representatives' Caucus Officers: 1900 until Today* 4 (4th ed., Pa. House of Representatives May 2004).

**11.** Those are: the Senate Democratic Caucus; the House of Representatives Republican Caucus; and the House of Representatives Democratic Caucus.

**12.** *The Pennsylvania Capitol and General Assembly: The Caucus and Leadership,* available at *http://www.legis.state.pa.us/WU01/vc/visitor_info/blue/caucus.htm.*

**13.** *Inside the Legislative Process,* at 2–69 tbl., 2–72 tbl. Available at *http://www.ncsl.org/documents/legismgt/ILP/99Tab2Pt4.pdf.*

cials" by listing them as such.[14] The Senate Republican Caucus reviews the daily calendar; briefs major issues; receives direction or feedback from members; forms caucus policy; develops party positions; and plans floor strategy.[15] The Senate Majority leaders have jurisdiction over the employees of the caucus and lead floor debate.[16] As the Majority party, the Senate Republican Caucus is responsible for placing significant legislation on the agenda. When a caucus is effective, it creates the "constitutional majority" to pass legislation.[17]

The political party caucuses are referenced in statutes concerning the organization of the Pennsylvania Legislature. The terms Majority and Minority Caucuses appear in various statutes, and the Senate Rules. The Majority and Minority Caucuses are recognized as having a role in the legislative process. The General Assembly delegated specific duties to them and an appropriation is made each fiscal year to the Senate for "caucus operations."[18]

For example, Section 2.2 of the Legislative Officers and Employes Law[19] directs the Majority and Minority Caucuses to each establish a Legislative Management Committee which is responsible for man-

aging the caucus's fiscal and personnel matters.

The *Majority and Minority Caucuses* shall each establish a Legislative Management Committee which shall be composed of the Floor Leader who shall be chairman and so many additional caucus members as may be determined by each caucus. *For the Majority Caucus, the President Pro Tempore, and for the Minority Caucus, the Minority Leader,* shall each select a staff administrator who shall administer the fiscal and personnel matters of the caucus in conjunction with the Chief Clerk and perform such other duties as may be assigned. 46 P.S. § 42.102(b) (emphasis added).

In addition, Section 4 of the Public Official Compensation Law,[20] 65 P.S. § 366.4, which pertains to the "officers and leaders" of the General Assembly, recognizes that Majority Caucus leaders are "public officers." It lists those officers and leaders (including the Majority Policy Chairman, and the Majority and Minority Caucus Administrators) who "shall be elected by the Senate or their respective caucuses" and provides the compensation each is to receive in addition to his/her salary as a member of the General Assembly.

Under the Right–to–Know Law[21] a "political party caucus" of the Senate or

---

14. The Pennsylvania Manual is a biennial guide to the Government of Pennsylvania produced by the Pennsylvania Department of General Services. The Pennsylvania Manual has been published by the Pennsylvania Government for over 200 years.

15. National Conference of State Legislatures, Inside the Legislative Process at 2–38 tbl., 2–41 tbl.

16. Inside the Legislative Process, at 2–107 tbl., 2–122 tbl. Available at *http://www.ncsl.org/documents/legismgt/ILP/99Tab2Pt4.pdf*.

17. *104 Years of Leadership: Pennsylvania House of Representatives' Caucus Officers:*

*1900 until Today* 4 (4th ed., Pa. House of Representatives May 2004).

18. *See* Act No. 10A of 2009 § 251, Act No. 1 A of 2010 § 251, Act No. 1 A of 2011 § 291 and Act No. 9A of 2012 § 261.

19. Added by the Act of July 12, 1981, P.L. 266.

20. Act of September 30, 1983, P.L. 160, *as amended.*

21. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

House of Representatives is specifically authorized to appoint an open-records officer. Section 502(a)(2) of the Right–to–Know Law, 65 P.S. § 67.502(a)(2).

The Rules of the Senate of Pennsylvania for the 2009–2010 Legislative Session (Rules), which were in effect when the termination of the contract at issue occurred, either directly or by reference to its leaders, reflect the existence and role of the political party caucuses in the daily administrative functions of the Senate. For instance, Rule XXXV requires that the Senate's Committee on Ethics and Official Conduct be composed of "[t]hree members of the Majority Party and three members of the Minority Party." Rule XXIX which establishes the procedures for the Senate to consider Executive Nominations made by the Governor pursuant to Article IV, Section 8 of the Pennsylvania Constitution, requires that the Secretary–Parliamentarian of the Senate furnish copies of the nominations and the nominees' financial statements "to the Majority and Minority Caucus Secretaries or their designees." The Financial Operating Rules for the Senate include multiple references to the "Caucus Operations Accounts" as an authorized source of funding for various legislative expenses. Senate Rule 2, 193d Leg., Reg. Sess. (Pa. Jan. 6, 2009).

The Senate Republican Caucus is entirely funded annually by the Commonwealth via an appropriation of funds allocated to the Senate Caucus Operations Account through the annual Pennsylvania Appropriations Act. All Caucus expenditures (e.g., contracts, services, individual caucus employees) are submitted to the Majority Staff Administrator for review, and are then submitted to the Chief Clerk of the Senate, who is the chief fiscal officer of the Senate. Deposition of Stephen MacNett, July 12, 2012, at 22–23; Appendix at 212a–213a. The Chief Clerk issues payment out of Senate funds for the caucus expenditures. *Id.* at 21; Appendix at 211a.[22]

One case which deserves mention is *Youngblood v. DeWeese,* 352 F.3d 836 (3d Cir.2003). Although that case involved whether the House Democratic Caucus was entitled to "legislative immunity" which this Court is not concerned with here, the Court's underlying treatment of the political party caucus in terms of its relationship to the General Assembly is instructive.

In *Youngblood,* the Court of Appeals for the Third Circuit considered whether caucus leaders enjoyed legislative immunity related to their decisions on the allocation or expenditure of funds controlled by the House Democratic Caucus. 352 F.3d at 841. The court found that the caucus "leaders'" exercise of that authority is more than merely "casually or incidentally related" to the appropriation-legislation. *Id.* (citation omitted). Instead, that authority is a "direct consequence" of legislation. The court concluded that because the decisions regarding the allocation of funds for office and staff expenses and compensation reflected the caucus leaders' deliberative and communicative processes in the course of exercising that legislative authority, they are, therefore, "privileged from judi-

---

**22.** According to Mr. MacNett, Senate funds are not to be used for political purposes. The uncontradicted testimony establishes that the Senate Republican Caucus used the database services provided by Precision Marketing to obtain or verify residence and contact information for constituents and constituent-communication purposes. Deposition of Stephen

MacNett at 27–28; Appendix at 217a–218a. Mr. MacNett explained that the Senate Republican Caucus used this information to discharge its core legislative functions and that the service was not used by the Caucus to further political purposes. Deposition of Stephen MacNett at 44; Appendix at 234a.

cial scrutiny." *Youngblood*, 352 F.3d at 841 (citing *Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972)).

The *Youngblood* court recognized the role of the political party caucus in administering funds and found this function to be a legitimate legislative activity of its chambers. Therefore, it follows that caucus is an integral part of the Senate and House of Representatives and, thus, the General Assembly.

■ Based on the foregoing, this Court finds that the Senate Republican Caucus is one of two subparts that together comprise the Pennsylvania Senate and, as such, it is an integral constituent of the Senate. It is, therefore, entitled to the same sovereign immunity as the Senate itself. It is one of two subsidiary bodies, with limited autonomy, which make up the formal organizational structure of the Senate. It performs essential legislative functions and administrative business in the Senate. It is serviced by State paid employees. It was created pursuant to the Senate's constitutional authority. It is funded by an appropriation in each fiscal year's General Appropriation Act. It has no existence or purpose outside of the Senate. Its creation, funding and operation are all inextricably intertwined with the Senate.

### Are the State's Resources at Risk from Any Judgment Against the Senate Republican Caucus?

Precision Marketing's breach of contract action, in essence, is one for recovery of money from the state.

■ In order for Precision Marketing to recover the funds to which it claims it is entitled, this Court would have to issue a decision compelling the General Assembly to appropriate the necessary funds, and directing the Senate Republican Caucus to pay such funds to Precision Marketing. As stated in *Finn v. Rendell*, 990 A.2d 100, 105 (Pa.Cmwlth.2010), the doctrine of sovereign immunity applies "to an action seeking to compel state parties to act or seeking to obtain money damages from the Commonwealth." An order from this Court granting Precision Marketing relief would, in the end, authorize Precision Marketing to recover damages from the State Treasury.

■ Sovereign immunity exists to protect the state treasury from being depleted by private litigants who seek to recover money damages. *Federal Maritime Commission v. South Carolina State Ports Authority*, 535 U.S. 743, 765, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002) ("state sovereign immunity serves the important function of shielding state treasuries and this preserving the States' ability to govern in accordance with the will of their citizens.")

Here, if Precision Marketing were to succeed in its request for monetary relief, it is taxpayer dollars that would be used to satisfy that award.

### Conclusion

The Senate Republican Caucus is part of the Senate, and as such it is "the Commonwealth." As "the Commonwealth" the Senate Republican Caucus is entitled to sovereign immunity.

The Motion for Summary Judgment of the Senate Republican Caucus is granted. Precision Marketing's Petition for Review/Statement of Claim is hereby dismissed with prejudice.

Judge COHN JUBELIRER and Judge SIMPSON did not participate in the decision in this case.

### ORDER

AND NOW, this 5th day of September, 2013, the Motion for Summary Judgment

filed by the Commonwealth of Pennsylvania, The Republican Caucus of the Senate of PA/AKA The Senate of PA Republican Caucus is hereby GRANTED. The Petition for Review/Statement of Claim filed by Precision Marketing, Inc. is dismissed with prejudice.