PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3271
_____

CRYSTAL STARNES

v.

BUTLER COUNTY COURT OF COMMON PLEAS,
50th Judicial District;
THOMAS DOERR, individually;
THOMAS HOLMAN, individually

Thomas Doerr,
         Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-17-cv-01304)
District Judge: Honorable Cathy Bissoon
_____

Argued April 22, 2020
Before: HARDIMAN, RENDELL, and FISHER, *Circuit Judges*.

(Filed: August 24, 2020)

Ronald T. Elliott
Thomas W. King, III
Dillon McCandless King Coulter & Graham
128 West Cunningham Street
Butler, PA 16001

Louis C. Long
Thomas P. McGinnis
Karin M. Romano [Argued]
Thomas Thomas & Hafer
525 William Penn Place
37th Floor, Suite 3750
Pittsburgh, PA 15219
*Attorneys for Appellant Thomas Doerr*

Jaime L. George
Edward A. Olds [Argued]
Olds Russ & Associates
1007 Mount Royal Boulevard
Pittsburgh, PA 15223
*Attorneys for Appellee Crystal Starnes*

Robert J. Krandel
Caroline P. Liebenguth
Supreme Court of Pennsylvania
Administrative Office of Pennsylvania Courts
1515 Market Street
Suite 1414
Philadelphia, PA 19102
*Attorneys for Butler County Court of Common Pleas, 50th
Judicial District and Thomas Holman*

———————

OPINION OF THE COURT

———————

HARDIMAN, *Circuit Judge*.

Judge Thomas Doerr appeals an order of the District Court denying him qualified immunity on civil rights claims brought by Plaintiff Crystal Starnes. Starnes contends we lack jurisdiction to hear the appeal, but we disagree. As for the merits, we agree with Starnes, except for her First Amendment freedom of association claim. So we will affirm in part, reverse in part, and remand the case for further proceedings.

I

Because Doerr appeals an order denying his motion to dismiss under Rule 12(b), we must accept Starnes's well-pleaded allegations as true, construe them in the light most favorable to her, and draw all reasonable inferences in her favor. *SEC v. Gentile*, 939 F.3d 549, 552 n.1 (3d Cir. 2019). We present the facts subject to those principles.

A

In 2004, Starnes met Doerr at a Christmas party held by the Chief Public Defender for Butler County, Pennsylvania. At the time, Starnes was a Probation Officer in Allegheny County, and Doerr was the President Judge of the Butler County Court of Common Pleas. Doerr flirted with Starnes at the party, they exchanged phone numbers, and Doerr suggested they stay in touch.

Following the party, Doerr repeatedly called Starnes to ask her to "meet him at his chambers." *Starnes v. Court of Common Pleas of Butler Cty. (Starnes I)*, 2018 WL 3586835, at *1 (W.D. Pa. 2018). Starnes initially declined Doerr's invitations, but in early 2005 she relented and visited his chambers after hours. When she arrived, Doerr began kissing her and insisted she have sex with him. Starnes did so even though Doerr's advances were not welcome. Earlier that evening, Doerr had discussed the prospect of hiring Starnes as a probation officer in Butler County. Doerr later told Starnes that "their sexual interactions would be a 'business relationship.'" *Id*.

In the summer of 2005, a job became available in the Butler County Probation Office. Doerr, in his capacity as President Judge, exercised supervisory authority over the hiring of probation officers. Starnes wished to return to Butler, her hometown, and Doerr made sure she was hired. After Starnes started working in Butler County, Doerr began summoning her to his chambers and cajoling her into sexual relations. He also shared pornography with Starnes and discussed sex on the telephone with her. This situation continued for four years.

After their sexual relations ended in 2009, Doerr continued to try to influence Starnes by asking her to film herself performing sexual acts, flirting with her from his position on the bench, holding her "hand while explaining that he could help her return to her previous job," and interrupting her when she spoke to male staff. *Id*. at *1–2. In 2010, Starnes began dating the man she later married, who was also a Probation Officer in Butler County. He was harassed and pushed into retirement by Butler County administrators.

4

In 2014, Doerr transferred Starnes to the Butler County Domestic Relations Office at her request. Starnes regretted her decision and asked to return to the Probation Office, which she was entitled to do within 30 days. At first, Doerr did not allow her to return. Thomas Holman, the Deputy Court Administrator, told Starnes that "[t]he marriage was over" and she would "have to sue Doerr" to get her previous job back. *Id.* at \*2, 8. Doerr eventually allowed Starnes to return, but only if she signed a general release waiving all claims against the Butler County Court of Common Pleas.

When Starnes returned to the Probation Office, she was denied her own office, overtime, training opportunities, and the right to serve on-call duty—opportunities she alleges her male counterparts had. She also was isolated from other officers and was not allowed to supervise other probation officers in the field. And whenever she visited probationers, Doerr assigned two male partners to accompany her because he believed it was too dangerous.

Because Starnes suspected discrimination, she contacted the United States Equal Employment Opportunity Commission (EEOC) in February 2016 intending to file charges. Within days of telling her supervisors (including Doerr and Holman) of her intentions, Starnes was placed on a "performance improvement plan" and she was told Doerr and Holman were behind the move. One month prior to that, Starnes had received a positive evaluation with no noted performance issues.

B

After the EEOC issued a right-to-sue letter, Starnes filed a five-count complaint (as Jane Doe) in the District Court

5

against Doerr, Holman, and the Butler County Court of Common Pleas. Count I alleged a Title VII hostile work environment claim against the County. Count II alleged that Doerr violated her First Amendment rights by forcing her to associate with him in an intimate fashion. Count III alleged a violation of her Fourteenth Amendment equal protection rights by discriminating against her on the basis of sex. Count IV alleged Doerr and Holman retaliated against her for exercising her First Amendment rights. Count V alleged Doerr and Holman violated her Fourteenth Amendment right to due process. After the District Court ordered her to do so, Starnes identified herself in an amended complaint.

Starnes later filed a second amended complaint, alleging the same five counts. Doerr moved to dismiss the claims against him (Counts II-V) for several reasons, including qualified immunity.[1]

On July 26, 2018, the District Court granted the motion in part and denied it in part. It dismissed Starnes's equal protection claim (Count III) without prejudice with leave to amend and dismissed her procedural due process claim (Count V) with prejudice. It denied Doerr's motion on all other grounds and rejected his qualified immunity defense.

As the Court gave Starnes a final chance to amend the equal protection claim, she filed a third amended complaint. Doerr again moved to dismiss, incorporating arguments from

---

[1] Holman and the Butler County Court also filed a motion to dismiss, which the District Court denied in its July 26 order. They are not parties to this appeal.

6

his previous motion to dismiss and reiterating his qualified immunity defense.

On October 4, 2018, the District Court denied the motion, holding that Starnes sufficiently alleged that Doerr discriminated against her because of sex. *Starnes v. Court of Common Pleas of Butler Cty.*, 2018 WL 4828515, at *1 (W.D. Pa 2018) (*Starnes II*). The District Court did not discuss other issues addressed in the opinion on the prior motion to dismiss, except to note that Doerr misunderstood the decision on the freedom of association claim (Count II) and that his "renewed immunity arguments" were "improperly raised and legally unsound." *Id*. at *1 n. 2.

Doerr appealed to our Court. Starnes moved to dismiss Doerr's appeal as untimely, claiming the July 26 order was not appealed within thirty days, as required by the Federal Rules of Appellate Procedure, and the October 4 order was an unappealable interlocutory order. A motions panel of this Court referred Starnes's motion to dismiss the appeal to the merits panel, so we address it now.

II

The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. The "collateral order doctrine" gives us jurisdiction under 28 U.S.C. § 1291 to review certain interlocutory orders. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545 (1949). An order denying a defendant qualified immunity can constitute such an order. *Mitchell v. Forsyth*, 472 U.S. 511, 526–27 (1985). An appeal must be filed within thirty days after entry of the order or judgment appealed from. FED. R. APP. P. 4(a). Our review is plenary. *See Bistrian v. Levi*, 696 F.3d 352, 364 (3d Cir. 2012).

7

Starnes argues we lack jurisdiction because Doerr failed to timely appeal the July 26 order that "conclusively determined" the qualified immunity issue. Starnes Br. 1–2 (citing FED. R. APP. P. 4(a)(1)). In order to be appealable, collateral orders must "conclusively determine" an issue, meaning the resolution of the issue must be "complete, formal, and . . . final." *Harris v. Kellogg Brown & Root Serv's, Inc.*, 618 F.3d 398, 401 (3d Cir. 2010) (citation omitted). Orders denying qualified immunity ordinarily are conclusive in one of two ways: (1) either "there will be nothing in the subsequent course of the proceedings in the district court that can alter the court's conclusion that the defendant is not immune"; or (2) "the court's denial . . . finally and conclusively determines the defendant's claim of right not to *stand trial* [or undergo "the burdens of broad-reaching discovery"] on the plaintiff's allegations." *Mitchell*, 472 U.S. at 526–527. In either case, "*Cohen*'s threshold requirement of a fully consummated decision is satisfied." *Id.* (quoting *Abney v. United States*, 431 U.S. 651, 659 (1977)).

The Court's October 4 order denying qualified immunity fits into the second category. It finally and conclusively subjects Doerr to the burdens of discovery and involved purely legal questions. It is therefore a final decision for purposes of the collateral order doctrine. *See Vanderklok v. United States*, 868 F.3d 189, 196–97 (3d Cir. 2017). So for Starnes to prevail on her jurisdictional argument, we would have to find that Doerr's failure to appeal the District Court's July 26 order denying qualified immunity and granting Starnes leave to file an amended complaint precluded him from challenging that denial of qualified immunity on appeal from subsequent orders that denied him qualified immunity. We

8

discern no reason why the July 26 order should have such preclusive effect.

In its July 26 order, the District Court decided the qualified immunity issue for most of Starnes's claims, but it granted her leave to amend. Had Starnes chosen to stand on her second amended complaint, the District Court's order certainly would have become an appealable interlocutory order. *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 705 (3d Cir. 1996).[2] But she filed a third amended complaint, and Doerr asserted qualified immunity by incorporating arguments he had made in his prior motion. The District Court then issued the October 4 order, which conclusively determined that litigation would proceed as to the amended claim as well as those addressed in July. Doerr then timely appealed that final, appealable interlocutory order in accordance with Rule 4(a).

In a previous decision, we explained that the Rule 4(a) deadline "applies to 'all appealable orders, including collateral orders, specifically orders denying immunity.'" *In re Montgomery County*, 215 F.3d 367, 372 (3d Cir. 2000) (quoting *Weir v. Propst*, 915 F.2d 283, 286 (7th Cir. 1990)). There, we quoted approvingly the Seventh Circuit's statement that if "the deadline [to appeal an interlocutory order] is missed, th[at] order is not appealable. The defendant must then wait until another appealable order . . . is entered, upon appeal of which he can challenge any interlocutory order that has not become moot." *Id.* (internal citation omitted). Doerr did just

---

[2] We need not, and do not, decide whether an order denying qualified immunity but granting narrow leave to amend, like the July order here, can ever be immediately appealable when a plaintiff does not elect to stand on her complaint.

that, "wait[ing] until another appealable order [on October 4 was] entered." *Id*. The qualified immunity issue was not moot and Doerr appealed the October 4 order well before the 30 days expired.

Finally, "the historic federal policy against piecemeal appeals" also supports our holding. *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956). As the Supreme Court has explained:

> From the very foundation of our judicial system the object and policy of the acts of congress in relation to appeals and writs of error . . . have been to save the expense and delays of repeated appeals in the same suit, and to have the whole case and every matter in controversy in it decided in a single appeal.

*McLish v. Roff*, 141 U.S. 661, 665–66 (1891). On Starnes's view, Doerr would have to appeal each order of the District Court denying qualified immunity. Forcing him to file two or more separate appeals on the qualified immunity issue at the pleadings stage would contravene our duty to "protect the integrity of the congressional policy against piecemeal appeals." *Switz. Cheese Ass'n v. E. Horne's Mkt. Inc.*, 385 U.S. 23, 25 (1966). Accordingly, we hold that Doerr's appeal is timely and we have jurisdiction under § 1291.

## III

Having established our jurisdiction to hear this appeal, we turn to the merits of Doerr's qualified immunity defense.

10

"In considering whether qualified immunity attaches, courts perform a two-pronged analysis to determine: (1) 'whether the facts that [the] plaintiff has alleged . . . make out a violation of a constitutional right,' and (2) 'whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct.'" *Kedra v. Schroeter*, 876 F.3d 424, 434 (3d Cir. 2017) (alterations in original) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). We ask if the case law at the time of the violation would have put the official on "fair notice" that his conduct violated the plaintiff's rights. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). In other words, the "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

To determine whether a right is clearly established, "[w]e look first to applicable Supreme Court precedent" and if "none exists, it may be possible that a 'robust consensus of cases of persuasive authority' in the Court[s] of Appeals could clearly establish a right for purposes of qualified immunity." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 247–48 (3d Cir. 2016) (alteration in original) (citation omitted).

A

We first consider Doerr's argument that the District Court erred in denying him qualified immunity on Starnes's Fourteenth Amendment equal protection claim (Count III). We disagree and hold that Starnes stated plausible claims for sex

11

discrimination in violation of the Equal Protection Clause. The District Court did not err in denying Doerr qualified immunity.

1

Starnes first alleges that Doerr violated her equal protection rights by treating her differently from her male colleagues because of her sex. The District Court found Starnes's allegations of sexual harassment "more than sufficiently allege[d] severe and pervasive discrimination" under the Fourteenth Amendment. *Starnes I*, 2018 WL 3586835, at \*8. It also found Starnes had alleged that Doerr denied her field-visit opportunities he gave male officers and prevented her from working as a standby probation officer, which cost her the "opportunity to acquire overtime and comp time." *Starnes II*, 2018 WL 4828515, at \*2. According to the District Court, these facts plausibly stated an equal protection claim. *Id.* (citing *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980)). We agree.

The Equal Protection Clause proscribes sex-based discrimination. *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992). We analyze Starnes's § 1983 equal protection claim using the *McDonnell Douglas* framework that applies in Title VII cases. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n. 1 (1993); *McKenna v. Pac. Rail Serv.*, 32 F.3d 820, 825 n.3 (3d Cir. 1994); *see also Lewis v. Univ. of Pittsburgh*, 725 F.2d 910, 915 n.5 (3d Cir. 1983) (explaining that Title VII and § 1983 share the same elements for discrimination purposes).

Title VII makes it an "unlawful employment practice for an employer to . . . discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges

12

of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a). An employer violates Title VII if the employee's sex was one but-for cause of her disparate treatment. *Bostock v. Clayton County*, 140 S. Ct. 1731, 1739–40 (2020).

Starnes alleged she was treated worse than similarly situated male probation officers in two ways: quid pro quo sexual harassment and the denial of job entitlements. She claimed Doerr coerced her into sexual relations, then continued to make sexually suggestive gestures toward her and asked her to perform sexual acts on herself after their relationship ended.

Starnes linked Doerr's sexual advances with her hiring and performance as a Butler County Probation Officer. As we have stated:

> [U]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute [*quid pro quo* ] sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual.

*Bonenberger v. Plymouth Township*, 132 F.3d 20, 27 (3d Cir. 1997) (second and third alterations in original) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1296 (3d Cir. 1997), *abrogated on unrelated grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

13

A triable claim exists when the plaintiff alleges that she would not have been sexually harassed but for her sex. *Bostock*, 140 S. Ct. at 1744 (Title VII) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) (same)). We have likewise explained that "[t]he intent to discriminate on the basis of sex in cases involving sexual propositions . . . is implicit, and thus should be recognized as a matter of course." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 214 (3d Cir. 2017) (citation omitted).

Starnes alleged Doerr forced her to engage in sexual relations, shared pornography with her, and requested she send him videos of herself performing lewd acts. She accused Doerr of flirting with her in an attempt to restart sexual relations. Starnes also alleged that their sexual encounters were considered a "business relationship," that Doerr had discussed using his position to help her get hired in Butler County before coercing her to engage in sexual relations, and that she felt compelled to acquiesce to his demands because of his position as her boss. And after they stopped having sex, Starnes alleged that she was denied many terms and conditions of her employment.

For example, Starnes claimed she was denied her own office, overtime opportunities, and the ability to go into the field and supervise other probation officers. She alleged that her male counterpart could go into the field to supervise his probationers, earn overtime, and attend supervisors' meetings. Finally, Starnes claimed she was not on the general email list for probation officers and that Doerr assigned two males to accompany her on field visits while the male probation officer could choose his partner.

14

Accepting these allegations as true, Starnes stated plausible claims for sex discrimination in violation of the Equal Protection Clause because of quid pro quo sexual harassment and the denial of benefits afforded to her male counterparts. *See id.* Because the law is clearly established that this conduct is actionable discrimination, the District Court did not err in denying Doerr qualified immunity.

2

We also consider whether the District Court erred in denying Doerr qualified immunity on Starnes's § 1983 hostile work environment claim. We hold it did not err.

Sexual harassment that creates a hostile work environment clearly violates Title VII. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Under Title VII, a hostile work environment exists "when the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The Supreme Court has explained further that "conditions" of employment cover not only economic or tangible discrimination, but "the entire spectrum of disparate treatment of men and women." *Id.* (citations omitted).

To plead a hostile work environment claim, a plaintiff must allege: "(1) [S]he suffered intentional discrimination . . .; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is

15

present." *Komis v. Sec'y of U.S. Dep't of Labor*, 918 F.3d 289, 293 (3d Cir. 2019) (alteration in original) (quoting *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53). "[L]ess severe isolated incidents which would not themselves rise to the level of [discrimination] may, when taken together as part of 'the overall scenario,' evidence [discriminatory] animus, and one severe incident may be enough to create a hostile work environment." *Id.* at 293–94.

Starnes alleged a hostile work environment under those standards. She alleges Doerr—her supervisor as the President Judge of Butler County—coerced her into engaging in sexual relations, shared pornography with her, asked her to film herself performing sexual acts, engaged in a pattern of flirtatious behavior, scolded her for speaking with male colleagues, assigned her duties forcing her to be close to him, and treated her differently than her male colleagues. Taken together, these allegations support severe or pervasive discrimination such that the working environment was subjectively and objectively offensive.

Doerr argues Starnes did not allege a clearly established right because we have not previously held that a hostile work environment is cognizable under § 1983. But we have been clear that § 1983 shares the same elements for discrimination purposes as a Title VII action. *See Lewis*, 725 F.2d at 915 n.5. And a robust consensus of persuasive authority exists to clearly establish that creating a hostile work environment constitutes a § 1983 violation. *See, e.g.*, *Lauderdale v. Tex. Dep't of Crim. Just., Inst. Div.*, 512 F.3d 157, 165–66 (5th Cir. 2007); *Huff v. Sheahan*, 493 F.3d 893, 902 (7th Cir. 2007); *Rivera v. P.R. Aqueduct & Sewers Auth.*, 331 F.3d 183, 191–92 (1st Cir. 2003); *Nieto v. Kapoor*, 268 F.3d 1208, 1217–20 (10th Cir.

16

2001); *Moring v. Ark. Dep't. of Corr.*, 243 F.3d 452, 455 (8th Cir. 2001); *Watkins v. Bowden*, 105 F.3d 1344, 1355 n.19 (11th Cir. 1997); *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996); *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994); *Bator v. Hawaii*, 39 F.3d 1021, 1027–28 (9th Cir. 1994); *Boutros v. Canton Reg'l Transit Auth.*, 997 F.2d 198, 202–04 (6th Cir. 1993) (overruled on other grounds by *Harris*, 510 U.S. at 17).

Because the law is clearly established that the sexual harassment Starnes alleged creates a hostile work environment actionable under § 1983, the District Court did not err in denying Doerr qualified immunity on Count III.

B

We turn now to Starnes's First Amendment claims.

1

In Count IV, Starnes claimed Doerr violated her freedom of expression and right to petition the government. The District Court concluded that Starnes sufficiently pleaded this claim and that Doerr was not entitled to qualified immunity. We agree.

Beginning in 2015, Starnes took a variety of actions protected by the First Amendment. After her request for on-call duty in 2015 was rejected, she sent several "Right to Know" requests to Butler County seeking information about overtime pay for probation officers. She also told her supervisors she planned to file a charge of discrimination with the EEOC. After telling her supervisors about the complaint in February 2016, Doerr and Holman placed her on a

17

"performance improvement plan" in March, even though she had received a good evaluation at the end of January. App. 113.

The law is clearly established that Doerr may not retaliate against Starnes for exercising her First Amendment rights. *Wilkie v. Robbins*, 551 U.S. 537, 555 (2007). Official retaliation for protected speech "offends the Constitution [because] it threatens to inhibit exercise of the protected right." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (alteration in original) (citation omitted). A plaintiff claiming retaliation must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising h[er] constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (citation omitted).

Starnes's complaint to the EEOC was constitutionally protected. *See Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997). "A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir. 2006) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). Starnes's report of sexual harassment and discriminatory conduct by the President Judge falls squarely within the protected conduct envisioned by the Constitution.

A public employee speaks as a citizen when she makes her statement outside the scope of her official duties. *See id.* A matter is of public concern if it "can be fairly considered as

18

relating to any matter of political, social or other concern to the community." *Id*. at 242–43 n.25 (citation omitted). When an employee exposes malfeasance by a government official, it is a matter of public concern. *Azzaro v. County of Allegheny*, 110 F.3d 968, 978–79 (3d Cir. 1997). As the District Court correctly reasoned, Starnes made her report to the EEOC as a citizen and the statement involved a matter of public concern because it dealt with sexual malfeasance and an abuse of power by a judge. Additionally, Starnes's EEOC complaint is "petitioning activity" because her complaint was not clearly frivolous or a sham. *See Hill*, 455 F.3d at 242 n.24; *Anderson*, 125 F.3d at 161.

Next, we must decide whether Starnes sufficiently alleged Doerr retaliated against her as a result of her report to the EEOC. Retaliatory action in this § 1983 case is conduct "sufficient to deter a person of ordinary firmness from exercising h[er] [constitutional] rights." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (second alteration in original) (citation omitted).

Starnes alleged that days after she told her supervisors about her complaint, Doerr and Holman placed her on a performance improvement plan. Such a plan would have a chilling effect on a person of ordinary firmness because she could reasonably believe pursuing her constitutional rights could jeopardize her employment and prospects for advancement. So Starnes alleged retaliatory action in response to her protected conduct.

Finally, Starnes must plead "but-for" causation between her constitutionally protected conduct and the retaliation. *Hartman*, 547 U.S. at 256. She must allege "the elements of retaliatory animus as the cause of injury, and the defendant will

have the . . . opportunity to respond to a prima facie case by showing that the action would have been taken anyway, independently of any retaliatory animus." *Id*. at 260–61. A causal link may be established by showing "unusually suggestive temporal proximity." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Starnes alleged that she told Holman and Doerr about her EEOC complaint in February 2016. And they placed her on a performance improvement plan within days. This temporal proximity between the protected activity and retaliation suggests causation. *See, e.g.*, *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (retaliatory conduct two days after an EEOC claim showed a causal link). When combined with Starnes's allegation that she had received a positive performance review a month before she was put on the performance improvement plan, we conclude that the allegations, "looked at as a whole, . . . suffice to raise the inference" of a causal link. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).

In sum, Starnes has pleaded that she spoke as a citizen on a matter of public concern and that she suffered retaliation as a result of the exercise of her clearly established constitutional right. We will therefore affirm the District Court's order denying Doerr's qualified immunity defense on Count IV.

2

We turn next to Doerr's argument that he is entitled to qualified immunity on Starnes's First Amendment association claim (Count II). The District Court denied Doerr qualified immunity on this claim as well. We disagree and will reverse.

Starnes alleged that Doerr "violat[ed] her association rights by imposing or seeking to impose an intimate relationship on her." Dkt. No. 34, at 11. Specifically, she averred that since she ended their sexual relationship, Doerr acted to coerce her into maintaining it, insisting she appear in his court so he could "look her over," transferring her to the Juvenile Division so she would "be close to him," App. 118, and scolding her when she spoke to other men at work. App. 118. Starnes also alleged that Doerr once "ran into [her] and her future husband at a Lowe's store, and remarked that he hoped they were off the clock." App. 72 ¶ 33. And Starnes alleged, in conclusory fashion, that she and her future husband "were subjected to harassment at the hands of the Court's administration under the direction or acquiescence of Doerr," eventually causing her husband to retire. App. 105 ¶ 34. Starnes married her husband despite the harassment.

Contrary to the claim as pleaded, the District Court understood Starnes to allege that Doerr unconstitutionally interfered with her relationship with her boyfriend (now husband). It held that Doerr's alleged acts showed sufficient interference with that relationship to state an intimate association claim. *Starnes I*, 2018 WL 3586835, at \*4–5 (citing *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 441–42 (3d Cir. 2000)). Because this is a civil rights case, we must determine whether Starnes is entitled to amend her intimate association claim. *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). So we will address both the claim Starnes pleaded and the claim construed by the District Court.

We begin with the claim as the District Court construed it. The right to freedom of association secures "a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition

21

for the redress of grievances, and the exercise of religion." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). It also protects an individual's right "to enter into and maintain certain intimate human relationships," *id.* at 617, which is "a fundamental element of personal liberty." *Id.* at 618. But not every intimate relationship is constitutionally protected. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1204 (3d Cir. 1988) (discussing factors in determining whether a relationship has constitutional protection). The Constitution protects "certain kinds of highly personal relationships" with "a substantial measure of sanctuary from unjustified interference by the State." *Roberts*, 468 U.S. at 618. These relationships include "those that attend the creation and sustenance of a family— marriage, . . . the raising and education of children, . . . and cohabitation with one's relatives." *Id*. at 619. In these domains, a plaintiff must allege conduct that interferes "directly and substantially" with her right to form or maintain that intimate relationship. *See Zablocki v. Redhail*, 434 U.S. 374, 387 (1978).

Neither the Supreme Court nor this Court has held that unmarried, romantic partners have a fundamental right to intimate association. Nor is there a robust consensus of persuasive authority recognizing such a right. *Compare Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 96 (1st Cir. 2009) ("The unmarried cohabitation of adults does not fall under any of the Supreme Court's bright-line categories for fundamental rights in this area.")) (citing *Roberts*, 468 U.S. at 619)), *and Cameron v. Seitz*, 38 F.3d 264, 274–76 (6th Cir. 1994) ("[T]he constitutional protection of the right of marital association did not clearly extend to a dating relationship or to engagement."), *with Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 58 (2d Cir. 2014) (betrothed couples are entitled to the same intimate

22

association protections as married couples), *and Christensen v. County of Boone*, 483 F.3d 454, 463 (7th Cir. 2007) (unmarried couples receive the same intimate association protections).

Thus, Doerr is entitled to qualified immunity on the claim as construed by the District Court (that Doerr interfered with Starnes's intimate relationship with her husband). Despite recognizing a gap in controlling authority, the District Court relied on three out-of-jurisdiction opinions to hold that an "official's conduct intending to disrupt a marriage violates the First Amendment." *Starnes I*, 2018 WL 3586835, at *9 (citing *Christensen*, 483 F.3d at 465; *Griffin v. Strong*, 983 F.2d 1544, 1549 (10th Cir. 1993); *Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 416 (6th Cir. 2011)).

The District Court defined the violative conduct too broadly for qualified immunity purposes. *al-Kidd*, 563 U.S. at 742 (warning courts not to define clearly established law at "a high level of generality"). While the factual circumstances of persuasive authority need not be "directly on point for a right to be clearly established," *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quotations omitted), they must be substantially similar enough that "the violative nature of [the] *particular* conduct is clearly established," *al-Kidd*, 563 U.S. at 742 (emphasis added). Here, a robust consensus of persuasive authority must exist to put any reasonable official on notice that the particular conduct of harassing a married couple in the workplace could violate someone's association rights.

The cases cited by the District Court do not suffice to put the argument "beyond debate." *al-Kidd*, 563 U.S. at 741. For starters, *Christensen* involves an unmarried couple. 483 F.3d at 457. Second, in *Griffin*, the Tenth Circuit considered an association claim brought by the subject of a police

23

investigation who complained that a police officer's lying to the subject's wife cost him his marriage. 983 F.2d at 1548–49 (holding that although marital association is constitutionally protected in general, the facts were not actionable in that case). A police officer's dishonesty is not sufficiently similar to harassment in the workplace. Third, in *Gaspers*, the Sixth Circuit considered a case where a wife was allegedly terminated from her position as superintendent of a correctional facility because of her marriage to a training officer at the same facility. 648 F.3d at 403. This is not enough to constitute a robust consensus of caselaw to put any reasonable official on notice that harassment violates an employee's association rights. *See Ullery v. Bradley*, 949 F.3d 1282, 1294–98 (10th Cir. 2020) (finding right clearly established with similar reported cases from six sister circuits and no cases holding otherwise); *Turner v. Lieutenant Driver*, 848 F.3d 678, 687 (5th Cir. 2017) (finding law not clearly established with only three sister circuits).

Even had such a right been clearly established, it would be unavailing to Starnes. She alleged that Doerr once "ran into [her] and her future husband at a Lowes store, and remarked that he hoped they were off the clock." App. 72 ¶ 33. Apart from the fact that Starnes was not married at the time this comment was made, this type of off-hand remark is insufficient to establish direct and substantial interference with her right to establish or maintain that relationship. *See Zablocki*, 434 U.S. at 386–87. In fact, Starnes alleged that she married her husband despite the harassment.

We next consider Starnes' claim as she pleaded it. Starnes provides no support for her allegation that an individual can violate another's association rights by forcing them to associate with that individual. So her claim as pleaded

24

does not implicate a right that is clearly established. *al-Kidd*, 563 U.S. at 741. Accordingly, Doerr is entitled to qualified immunity on Starnes's pleaded claim.

Doerr is entitled to qualified immunity on both claims of liability because neither the association claim Starnes pleaded nor the one the District Court construed alleges a violation of a clearly established right. As such, amendment would be futile. *See Fauver*, 213 F.3d at 116; *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002). Thus, we will reverse the District Court's denial of qualified immunity on Starnes's intimate association claim.

\*     \*     \*

For the reasons stated, we will affirm in part and reverse in part. We will affirm the District Court's order denying Doerr qualified immunity on Starnes's Fourteenth Amendment equal protection claim (Count III) and her First Amendment retaliation claim (Count IV). We will reverse the District Court's order denying Doerr qualified immunity on Starnes's First Amendment association claim (Count II). The case will be remanded for further proceedings consistent with this opinion.