PRECEDENTIAL

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT
_____

No. 18-2377
_____

HIRA EDUCATIONAL SERVICES NORTH AMERICA

v.

FRANK AUGUSTINE, in his official capacity as Chairman
of the Board of Supervisors of the TWP OF Shenango,
Lawrence County, Pennsylvania; ALBERT BURICK, III, in
his official capacity as Supervisor and Secretary-Treasurer of
the Board of Supervisors of the Twp of Shenango, Lawrence
County, Pennsylvania; RUSSELL RILEY, in his official
capacity as Vice Chairman of the Board of Supervisors of the
Twp of Shenango, Lawrence County, Pennsylvania; CURT
TOPPER, in his official capacity as Secretary of the
Pennsylvania Department of General Services; JOSHUA
LAMANCUSA, in his official capacity as District Attorney at
the Lawrence County District Attorney's Office in
Pennsylvania; BRUCE LEONATTI, in his official capacity as
President of the Pittsburgh Chapter of Act for America;
AARON BERNSTINE, in his individual capacity as State
Representative of the PA State House of Representatives;
CHRISTOPHER SAINATO, in his individual capacity as
State Representative of the PA State House of
Representatives; ELDER VOGEL, JR., in his individual
capacity as Senator at the PA State Senate,

Christopher Sainato,
Appellant

_____

No. 18-2378
_____

HIRA EDUCATIONAL SERVICES NORTH AMERICA

v.

FRANK AUGUSTINE, in his official capacity as Chairman
of the Board of Supervisors
of the TWP OF Shenango, Lawrence County, Pennsylvania;
ALBERT BURICK, III, in his official capacity as Supervisor
and Secretary-Treasurer of the Board of Supervisors of the
Twp of Shenango, Lawrence County, Pennsylvania;
RUSSELL RILEY, in his official capacity as Vice Chairman
of the Board of Supervisors of the Twp of Shenango,
Lawrence County, Pennsylvania; CURT TOPPER, in his
official capacity as Secretary of the Pennsylvania Department
of General Services; JOSHUA LAMANCUSA, in his official
capacity as District Attorney at the Lawrence County District
Attorney's Office in Pennsylvania; BRUCE LEONATTI, in
his official capacity as President of the Pittsburgh Chapter of
Act for America; AARON BERNSTINE, in his individual
capacity as State Representative of the PA State House of
Representatives; CHRISTOPHER SAINATO, in his
individual capacity as State Representative of the PA State
House of Representatives; ELDER VOGEL, JR., in his
individual capacity as Senator at the PA State Senate,

2

Aaron Bernstine,
Appellant

_____

No. 18-2400

_____

HIRA EDUCATIONAL SERVICES NORTH AMERICA

v.

FRANK AUGUSTINE, in his official capacity as Chairman of the Board of Supervisors of the TWP OF Shenango, Lawrence County, Pennsylvania; ALBERT BURICK, III, in his official capacity as Supervisor and Secretary-Treasurer of the Board of Supervisors of the Twp of Shenango, Lawrence County, Pennsylvania; RUSSELL RILEY, in his official capacity as Vice Chairman of the Board of Supervisors of the Twp of Shenango, Lawrence County, Pennsylvania; CURT TOPPER, in his official capacity as Secretary of the Pennsylvania Department of General Services; JOSHUA LAMANCUSA, in his official capacity as District Attorney at the Lawrence County District Attorney's Office in Pennsylvania; BRUCE LEONATTI, in his official capacity as President of the Pittsburgh Chapter of Act for America; AARON BERNSTINE, in his individual capacity as State Representative of the PA State House of Representatives; CHRISTOPHER SAINATO, in his individual capacity as State Representative of the PA State House of Representatives; ELDER VOGEL, JR., in his individual capacity as Senator at the PA State Senate,

3

Elder Vogel, Jr.,
        Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-18-cv-00486)
District Judge: Honorable Arthur J. Schwab

_____

Argued on November 9, 2020
Before: HARDIMAN, GREENBERG,* and SCIRICA,
*Circuit Judges*.

(Filed: March 15, 2021)

Jonathan F. Bloom
Karl S. Myers [argued]
Melissa L. Perry
STRADLEY RONON
STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA 19103
*Attorneys for Appellant Representative Christopher Sainato*

Arthur H. Stroyd, Jr.
Zachary N. Gordon [argued]
Del Sole Cavanaugh Stroyd LLC

_____

* The Honorable Morton I. Greenberg died on January 28, 2021; this opinion is filed by a quorum of the Court. 28 U.S.C. § 46 and Third Circuit IOP 12.1(b).

4

Three PPG Place, Suite 600
Pittsburgh, PA 15222
*Attorneys for Appellant Representative Aaron Bernstine*

John P. Krill, Jr.
Anthony R. Holtzman [argued]
Mark A. Rush
Thomas R. DeCesar
K&L Gates LLP
17 North Second Street, 18th Floor
Harrisburg, PA 17101-1507
*Attorneys for Appellant Senator Elder Vogel Jr.*

Christina A. Jump [argued]
Charles D. Swift
833 E. Arapaho Rd.
Suite 102
Richardson, Texas 75081
*Attorneys for the Appellee*

———————

OPINION OF THE COURT

———————

HARDIMAN, *Circuit Judge*.

This interlocutory appeal was filed by three Pennsylvania legislators. Senator Elder Vogel and Representatives Christopher Sainato and Aaron Bernstine (collectively, Legislators) seek review of District Court orders denying them absolute legislative immunity and qualified

immunity from claims brought by HIRA Educational Services of North America.

I

The two orders under review denied Appellants' motions to dismiss under Rule 12(b). So we accept HIRA's well-pleaded allegations as true, and we construe the facts and draw all reasonable inferences in HIRA's favor. *See Starnes v. Butler Cnty. Ct. of C.P., 50th Jud. Dist.*, 971 F.3d 416, 422 (3d Cir. 2020).

A

This dispute involves the sale of property owned by the Commonwealth of Pennsylvania. Each year, the Pennsylvania Department of General Services (DGS) develops a plan to sell Commonwealth-owned property. 71 PA. STAT. AND CONS. STAT. ANN. § 651.3 (West). The Pennsylvania General Assembly, comprised of the Senate and the House of Representatives, must approve DGS's plan. § 651.4.

In 2017, consistent with the plan approved by the General Assembly, DGS solicited bids for the purchase of the New Castle Youth Development Center, a property which had housed juvenile offenders in Shenango Township until it closed in 2013. DGS had been trying to sell the property for several years but never received an adequate bid.

This time, Appellee HIRA—a consulting agency for Islamic educational groups—submitted the highest bid of $400,000. HIRA wanted to use the property to establish a youth intervention center much like the one located there before. HIRA also hoped to establish an Islamic boarding

school on the property. DGS accepted HIRA's bid, and the parties entered into a land sale agreement.

On June 7, 2017, a week after HIRA and DGS entered into the sale agreement, Vogel, Bernstine, and Sainato sent a letter to Governor Tom Wolf expressing concerns about the sale. The Legislators claimed HIRA was not in a financial position to turn the property into an economic driver for the community. They noted that New Jersey had revoked HIRA's corporate status and HIRA reported low income on several of its tax filings. The Legislators also complained that HIRA had not returned their phone calls and that some paperwork relating to the sale remained incomplete. The Legislators requested a written response and a meeting with Governor Wolf to discuss their concerns.

When Governor Wolf did not act, the Legislators took a public stand against the sale. Bernstine, Sainato, and a staffer from Vogel's office attended a Shenango Township community meeting where some members of the public made disparaging comments about Muslims and espoused baseless rumors about HIRA and HIRA's plans for the property. Bernstine and Sainato also complained to the press. They thought the sale was being pushed through too quickly, and distrusted HIRA's stated intentions for the property. Bernstine vowed to "continue to pursue every avenue possible to uncover information related to this facility and [to] continue to call [HIRA] daily until they pick up their phone." App. 45, ¶ 69. And when the Lawrence County District Attorney's Office opened a criminal investigation into the sale based on an anomaly in the bidding process, Bernstine saw the investigation as "another step toward getting the sale vacated." App. 46, ¶ 72.

7

The Legislators then tried to pass a law divesting DGS of the authority to sell the property. *See* S. Res. 154, 2017 Leg., 2017 Sess. (Pa. 2017). Vogel introduced Resolution 154, and after the Senate approved it, Sainato and Bernstine presented it to the House State Government Committee. The full House abandoned the resolution without a vote. After the resolution failed, Bernstine, Sainato, and a staffer from Vogel's office met with the Secretary of DGS to try to persuade DGS to halt the sale.

At the local level, Shenango Township adopted Ordinance No. 4 of 2017, which rezoned the area where the Development Center was located to prohibit commercial schools. HIRA alleged the Township adopted the ordinance to frustrate HIRA's goal of establishing a boarding school on the property. But HIRA did not allege any connection between the Legislators and the ordinance.

HIRA claimed the public outcry, Shenango Township's new zoning ordinance, Senator Vogel's resolution, and the criminal investigation prevented HIRA from securing funding and prevented the Commonwealth from transferring clear title, which caused the parties to void the land sale agreement.

After the sale fell through, DGS asked for new bids. HIRA offered $500,000 but was outbid by a group that offered $2,000,000. Bernstine and Sainato promised to ensure the new purchaser secured funding, and none of the Legislators challenged the sale to this new buyer.

B

HIRA sued various state and local officials, including the Legislators in their individual capacities. At issue on appeal

8

are the Legislators' alleged violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA), the Pennsylvania Religious Freedom Protection Act, and 42 U.S.C. § 1983. HIRA also requested declaratory and injunctive relief to delay the transfer of the property to the new buyer.

The Legislators moved to dismiss. All three claimed absolute legislative immunity under federal common law and the Pennsylvania Constitution's Speech or Debate Clause. Vogel and Sainato also claimed qualified immunity, but Bernstine did not.

The District Court denied the Legislators' motions to dismiss. Although at first it found the immunity claims to be "straightforward legal arguments," the Court rejected the motions as "premature" because "[w]hether any of these individuals is entitled to immunity rests upon whether the individuals engaged in 'legitimate' activities while in the course and scope of their position and authority." Dist. Ct. Dkt. 88, at 2. It found, based on the allegations of HIRA's complaint, that none of the Legislators were engaged in legitimate legislative activities, so the "legal issues concerning immunity . . . [were] mired in facts, which need to be developed through the discovery process." *Id.* The District Court denied Sainato's motion to dismiss in its order dated June 13. It denied Bernstine and Vogel's motions to dismiss on June 21 after resolving their unrelated arguments.

The Legislators filed Notices of Appeal from the District Court's orders.[1] But the District Court challenged the

---

[1] Bernstine filed his Notice of Appeal prematurely. Under Rule 4(a)(2) of the Federal Rules of Appellate Procedure and the *Cape May Greene* doctrine, his Notice became effective when

9

appeal for two reasons. First, the Court did not believe it made a final decision on the Legislators' immunity because it "simply dismissed [the] Motion[s] to Dismiss as 'premature'" to allow the parties "to develop a factual record." Dist. Ct. Dkt. 102, at 2. Second, because it denied the motions without prejudice, the District Court did not think the collateral order doctrine applied.[2]

II

The District Court had subject matter jurisdiction over HIRA's federal claims under 28 U.S.C. § 1331. It had supplemental jurisdiction over the Pennsylvania Religious Freedom Protection Act claim under 28 U.S.C. § 1367.

Our jurisdiction is disputed. HIRA claims we lack jurisdiction over this appeal because the District Court's orders were not final. We disagree.

Ordinarily, a final order "is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l. Union of Operating Eng'rs & Participating Emps.*, 571

---

the District Court entered judgment. *See* FED. R. APP. P. 4(a)(2); *Adapt of Phila. v. Phila. Housing Authority*, 433 F.3d 353, 362–64 (3d Cir. 2006).

[2] The District Court treated Sainato's Notice of Appeal as a motion to stay, denied that motion, and ordered the Legislators to continue to comply with the deadlines set in the District Court's scheduling order. The District Court later granted a stay pending this appeal after the case was reassigned to a different judge.

U.S. 177, 183 (2014). But under the collateral order doctrine, certain interlocutory orders are final for purposes of 28 U.S.C. § 1291, including some orders denying immunity. *See, e.g.*, *George v. Rehiel*, 738 F.3d 562, 570–71 (3d Cir. 2013) (qualified immunity); *Youngblood v. DeWeese*, 352 F.3d 836, 838 (3d Cir. 2003) (legislative immunity). Where absolute or qualified immunity apply, parties are immune from suit, not merely from liability. *Mitchell v. Forsyth*, 472 U.S. 511, 525, 527–28 (1985). For that reason, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

Denials of immunity are immediately appealable even if the denial is "implicit." When a district court refuses to rule on an immunity claim "on the premise that the court is unable, . . . or prefers not to, determine the motion without discovery" then it is making "at least an implicit decision that the complaint alleges a . . . claim on which relief can be granted." *Rehiel*, 738 F.3d at 571 (quoting *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 66 (2d Cir. 1999)). Such delay vitiates immunity as government officials "otherwise entitled to immunity [are] nonetheless subjected to 'the burdens of such *pretrial* matters as discovery.'" *Oliver v. Roquet*, 858 F.3d 180, 188 (3d Cir. 2017) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996)).

Here, the District Court made two errors when it deemed the Legislators' appeals improper. First, its order acted as an implicit denial of immunity—even though it was without prejudice—because it would require the Legislators to bear the burdens of discovery and other pretrial matters. *See id*. Second, the Legislators' immunity claims depend on questions of law and not on factual disputes that would deprive us of jurisdiction. *See id*. at 187. The Legislators do not, for purposes

11

of this appeal, challenge the truth of HIRA's allegations. They argue instead that even if HIRA's allegations are true they are nonetheless entitled to absolute or qualified immunity. Besides, any factual challenge by the Legislators would be doomed because this appeal arises from the District Court's denial of their motions to dismiss. As previously noted, at this stage of the litigation we accept HIRA's well-pleaded allegations as true. *See Starnes*, 971 F.3d at 422. Whether HIRA alleged conduct by the Legislators that falls outside the sphere of legitimate legislative activities or that violates clearly established law is a question of law over which we have jurisdiction. *See Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 168 (3d Cir. 2016); *Carver v. Foerster*, 102 F.3d 96, 99 (3d Cir. 1996).

III

Having established our jurisdiction, we turn to the merits. The question presented is whether the Legislators are entitled to either absolute legislative immunity or qualified immunity.

A

We first consider absolute immunity. Although legislative immunity from federal claims and state claims arise from different sources, in this case the scope of immunity is the same for both. State legislators' immunity from federal claims comes from federal common law, which "in civil cases . . . is coterminous with that of the immunity provided by the Speech or Debate Clause." *Larsen v. Senate of Pa.*, 152 F.3d 240, 249 (3d Cir. 1998) (discussing immunity and liability under

§ 1983); *see* U.S. CONST. art. I, § 6, cl. 1.[3] Legislative immunity from state law claims is governed by the Pennsylvania Constitution's Speech or Debate Clause, PA. CONST. art. II, § 15,[4] but the Pennsylvania Supreme Court looks to caselaw interpreting the federal Speech or Debate Clause to guide its interpretation of the Pennsylvania clause. *See Consumers Educ. & Protective Ass'n v. Nolan*, 368 A.2d 675, 680–81 (Pa. 1977). Thus, our analysis is governed by caselaw applying the federal Speech or Debate Clause when determining the Legislators' immunity to HIRA's claims.

Although the text of the Speech or Debate Clauses protects only speech made during a legislative session, the Supreme Court has extended the immunity far beyond that context. In civil cases, a legislator is immune for "all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). This sphere includes

---

[3] "The Senators and Representatives . . . shall in all cases, except treason, felony and breach of the peace, be privileged from arrest during their attendance at the session of their respective Houses, and in going to and returning from the same; and for any speech or debate in either House, they shall not be questioned in any other place."

[4] "The members of the General Assembly shall in all cases, except treason, felony, violation of their oath of office, and breach or surety of the peace, be privileged from arrest during their attendance at the sessions of their respective Houses and in going to and returning from the same; and for any speech or debate in either House they shall not be questioned in any other place."

13

acts that are "quintessentially legislative" or that are "integral steps in the legislative process." *Id.* at 55. We have recognized several activities within this sphere: legislative factfinding and investigation, writing committee reports, offering resolutions, voting, and "the things generally done in a session of the House by one of its members in relation to the business before it." *Youngblood*, 352 F.3d at 839 (internal quotation marks omitted) (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880)).

Immunity does not attach, however, to acts only "casually or incidentally related to legislative affairs but not a part of the legislative process itself." *Id.* at 840 (internal quotation marks omitted) (quoting *United States v. Brewster*, 408 U.S. 501, 528 (1972)). Such acts include political activities like performing "errands" for constituents, making appointments with government agencies, securing government contracts, preparing news releases, and delivering speeches outside Congress. *Id.*

Although HIRA makes slightly different claims against each of the Legislators, it seeks to hold them liable for the following actions: (1) introducing a resolution to divest DGS of its authority to sell the property; (2) co-authoring a letter to Governor Wolf describing their concerns with the sale; (3) acting with discriminatory intent; (4) making public statements against the sale that implied unscrupulous behavior by HIRA or DGS; (5) calling HIRA repeatedly; (6) meeting with the Secretary of DGS to try to persuade him to halt the sale; and (7) treating the subsequent purchaser of the property more favorably than they treated HIRA. We address each below.

At the outset, our analysis is unaffected by HIRA's allegation that the Legislators acted with discriminatory intent.

14

Both legislative and qualified immunity protect legislators irrespective of their subjective intent. *See Youngblood*, 352 F.3d at 840–41 (legislative immunity); *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982) (qualified immunity).

Vogel's introduction of Senate Resolution 154 and Sainato and Bernstine's presentation of it to the House were quintessentially legislative activities. *See Youngblood*, 352 F.3d at 839. HIRA tries to distinguish this resolution by citing *Ryan v. Burlington Cnty., N.J.*, which created two criteria for an action to be legislative; the action must be both substantively legislative (*i.e.*, involve general policy decisions rather than target individuals) and procedurally legislative (*i.e.*, passed by proper legislative procedures). *See* 889 F.2d 1286, 1290–91 (3d Cir. 1989). HIRA argues that because the resolution targeted HIRA, it was too narrowly focused to be substantively legislative. HIRA misreads our precedent. We ask whether an official act is substantively and procedurally legislative when classifying actions performed by *municipal* officials who possess both legislative and administrative powers. *Larsen*, 152 F.3d at 252. When determining whether *state legislators* are acting legislatively, however, we consider only the nature of the act rather than its target or effect. *See id.*; *Bogan*, 523 U.S. at 54. Accordingly, we hold the Legislators are entitled to absolute legislative immunity for introducing Resolution 154.

Absolute legislative immunity also applies to the Legislators' letter to Governor Wolf and Bernstine's calls to HIRA because both are examples of protected legislative factfinding. *See Youngblood*, 352 F.3d at 839. Legislative factfinding is an "essential" part of the legislative process. *Gov't of V.I. v. Lee*, 775 F.2d 514, 521 (3d Cir. 1985) (applying federal Speech or Debate Clause principles when interpreting

15

Virgin Islands immunity statute). Here, because the Legislators had the authority to introduce legislation to block the sale, they also had the authority to engage in factfinding to help draft such legislation. The letter to the Governor outlined the Legislators' concerns but then requested a meeting so they could learn more about the sale before introducing Resolution 154. Likewise, the calls to HIRA were attempts to learn more about the sale while the resolution was pending in the legislature.

In addition to the quintessentially legislative activities just discussed, HIRA claimed the Legislators made disparaging public comments about HIRA, met with the DGS Secretary in an attempt to get DGS to cancel the sale to HIRA, and gave preferential treatment to the subsequent purchaser of the property. These are most accurately described as political "errands" or "speeches delivered outside [of] Congress," so the Legislators are not entitled to absolute immunity for those activities under *Brewster*. *See* 408 U.S. at 512.[5] But are the

---

[5] The Commonwealth Court's decision in *Firetree, Ltd. v. Fairchild* ruled under Pennsylvania law that public speeches and comments by a legislator opposed to the sale of Commonwealth property "fell within the ambit of legitimate legislative activity" because the General Assembly could act on the issue. 920 A.2d 913, 922 (Pa. Commw. Ct. 2007). While *Firetree* may serve as a basis to dismiss the state law claims related to public comments on absolute immunity grounds, *Firetree* cannot resolve the federal law claims against the Legislators. Accordingly, we must address whether or not the Legislators' public comments are covered by qualified immunity.

16

Legislators entitled to qualified immunity for that conduct? We address that question next.

B

Qualified immunity shields officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. When analyzing a qualified immunity claim we consider "(1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016).

To be clearly established, a right must be so apparent that "every reasonable official would understand that what he is doing is unlawful." *James v. N.J. State Police*, 957 F.3d 165, 169 (3d Cir. 2020) (internal quotation marks omitted) (quoting *District of Columbia v. Wesby*, 583 U.S. ---, 138 S. Ct. 577, 589 (2018)). An official will not be charged with such an understanding unless existing precedent has "placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). And as the Supreme Court emphasized recently, the right must be defined with a "high 'degree of specificity'" before we consider that right clearly established. *Wesby*, 138 S. Ct. at 590 (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)). The legal principle established in a precedential case must "clearly prohibit the offic[ial's] conduct in the particular circumstances before him." *Id.* at 581.

HIRA's claims against Vogel and Sainato fail because HIRA has not pointed to any precedential case prohibiting legislators from speaking against the sale of state-owned

property or from extending preferential treatment to certain recipients of government contracts. HIRA counters that the general constitutional rule that government officials cannot interfere with the free exercise of religion was sufficiently clear to give the Legislators fair warning of liability. But given the high degree of specificity required to prove that a right has been clearly established, the general constitutional rule HIRA points to does not suffice.

HIRA's case is weaker still in view of *X-Men Security, Inc. v. Pataki*, the only case on point. *See* 196 F.3d 56 (2d Cir. 1999).[6] In *X-Men*, the plaintiff security company held a public contract. Two legislator-defendants: (1) urged a state agency to terminate the contract, *id.* at 61; (2) asked a federal agency and congressional committee to investigate the company, *id.* at 62; and (3) accused the security company of being racist, anti-Semitic, a religious hate group, misogynistic, and affiliated with the Nation of Islam, *see id.* at 71. The Second Circuit held that the plaintiffs failed to allege a violation of any constitutional or statutory right—let alone a clearly established one—because "the First Amendment protects a legislator's right to communicate with administrative officials to provide assistance in securing a publicly funded contract, [and it also] protect[s] the legislator's right to state publicly his criticism of the granting of such a contract to a given entity and to urge to the administrators that such an award would contravene public policy." *Id.* at 70.

---

[6] While not discussing qualified immunity and therefore not directly on point, *Firetree* concluded in dicta that under the First Amendment, legislators have "an absolute right, as a citizen or as a legislator, to petition the executive branch to stop a proposed sale of Commonwealth property." 920 A.2d at 919.

Like the plaintiffs in *X-Men*, HIRA alleges the Legislators urged the agency (DGS) to terminate its contract with HIRA, sought an investigation into the sale, disparaged HIRA, and favored a different recipient of the government contract. HIRA's only attempt to distinguish this case from *X-Men* is to assert that it "has clearly articulated both the constitutional and statutory rights that have been violated by the Legislative Defendants and the actions that constituted those violations." HIRA Response Br. 34–35. Even assuming that HIRA has alleged violations of constitutional and statutory rights that are not foreclosed by the Legislators' First Amendment rights, that would show only that HIRA has stated a claim; it does nothing to show the Legislators violated *clearly established* law. Although HIRA rightly notes that the Second Circuit's decision is not binding on this Court, the absence of precedent in its favor from the Supreme Court or this Court dooms its case.[7] That, combined with an adverse precedent from our sister court, puts HIRA well short of showing that the rights it seeks to vindicate here were clearly established. So Vogel and Sainato are entitled to qualified immunity.[8]

---

[7] The recent Supreme Court decision in *Taylor v. Riojas*, 141 S. Ct. 52 (2020), does not change our analysis in this case. The Legislators' actions were not so outrageous that "no reasonable . . . officer could have concluded" they were permissible under the Constitution, *Taylor*, 141 S. Ct. at 53, especially in light of *X-Men* and *Firetree*.

[8] Because Bernstine failed to raise qualified immunity before the District Court in his Rule 12(b)(6) motion, he has forfeited that defense in this appeal. *See Spireas v. Comm'r*, 886 F.3d 315, 321 (3d Cir. 2018). He may re-raise it on remand. *See*

19

\*      \*      \*

For the reasons stated, we will reverse in part and affirm in part. We will reverse the District Court's order denying Vogel and Sainato's motions to dismiss based on absolute and qualified immunity. Bernstine is entitled to absolute immunity for some of the allegations made against him, so we will reverse the District Court's order except as to those actions for which he is not entitled to absolute immunity. We leave those issues to the District Court on remand.

---

*Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (allowing qualified immunity to be raised for a second time on remand).